699 So.2d 999 (1997)
Kelli SNYDER, Petitioner,
v.
Kent W. DAVIS, etc., Respondent.
No. 89410.
Supreme Court of Florida.
September 18, 1997.
Gerald L. Pickett of Gerald L. Pickett, P.A., Inverness, for petitioner.
Kent W. Davis of Foster & Davis, St. Petersburg, for respondent.
OVERTON, Justice.
We have for review the decision of the Second District Court of Appeal in Davis v. Snyder, 681 So.2d 1191 (Fla. 2d DCA 1996). The district court held that the testator could not both devise her homestead property to her granddaughter and preserve its exemption from creditors. The court found that while the homestead could be devised, the constitutional exemption from creditors would follow the homestead only if it were devised to the person or persons who would have actually taken the homestead had the testator died intestate. In this case the granddaughter would not have taken the homestead under the intestacy statutes because the testator's natural son was still alive at the death of the testator. See § 732.103, Fla. Stat. (1995). The court then certified *1000 the following question to be of great public importance:
WHETHER ARTICLE X, SECTION 4, OF THE FLORIDA CONSTITUTION EXEMPTS FROM FORCED SALE A DEVISE OF A HOMESTEAD BY A DECEDENT NOT SURVIVED BY A SPOUSE OR MINOR CHILD TO A LINEAL DESCENDANT WHO IS NOT AN HEIR UNDER THE DEFINITION IN SECTION 731.201(18), FLORIDA STATUTES (1993).
Id. at 1193. We have jurisdiction. Art. V, § 3(b)(4), Fla. Const.
For the reasons expressed, we answer the certified question in the affirmative and quash the district court's decision. We find that in these circumstances the word "heirs," when determining entitlement to the homestead protections against creditors, is not limited to only the person or persons who would actually take the homestead by law in intestacy on the death of the decedent. Instead, we hold that the constitution must be construed to mean that a testator, when drafting a will prior to death, may devise the homestead (if there is no surviving spouse or minor children) to any of that class of persons categorized in section 732.103 (the intestacy statute). To hold otherwise would mean that a testator, when making an effort to avoid intestacy by drafting a will, would have to guess who his or her actual heirs[1] would be on the date of death in order to maintain the homestead's constitutional protections against creditors.

FACTS
Betty Snyder died testate on February 15, 1995. In her will, she made the following dispositions:
First, the expenses of my funeral, burial, or other disposition of my remains I may have directed, my just debts, and the costs of administering my estate shall be paid out of the residue of my estate.
Second, I give, devise and make special provisions as follows:
a. The sum of $3,000 to my son, MILO SNYDER, provided he survives me.
b. The sum of $2,000 to my friends, JOE BEDRIN and BARBARA BEDRIN, or to the survivor of them.
Third, I give and devise all the rest, residue, and remainder of my property of every kind and wherever situated, as follows: All to my granddaughter, KELLI SNYDER.
Betty Snyder was not survived by a spouse. She was, however, survived by her only son, Milo Snyder and his only daughter, Kelli Snyder. Both Milo and Kelli are adults.
Kent W. Davis, the personal representative of Betty Snyder's estate, sought to sell the homestead property to satisfy creditors' claims, to fund specific bequests, and to pay the costs of administration. Kelli Snyder, the residuary beneficiary, asserted that the testator's homestead passed to her free of claims because she was protected by article X, section 4, of the Florida Constitution (the homestead provision). The homestead provision reads, in relevant part, as follows:
(a) There shall be exempt from forced sale under process of any court, and no judgment, decree, or execution shall be a lien thereon, except for the payment of taxes and assessments thereon, obligations contracted for the purchase, improvement or repair thereof, or obligations contracted for house, field or other labor performed on the realty, the following property owned by a natural person:
(1) a homestead....
....
(b) These exemptions shall inure to the surviving spouse or heirs of the owner.

Art. X, § 4, Fla. Const. (emphasis added).
There is no dispute in this case that Betty Snyder's home was homestead property for the purpose of distribution or that said property was properly devised in the residuary clause of her will. The sole issue is whether Kelli Snyder, as the granddaughter, may be properly considered an heir under the homestead provision, qualifying her for protection from the forced sale of the homestead property when her father, the next-in-line heir *1001 under statutory intestate succession, is still living.
The personal representative argues that, had Betty Snyder died intestate, Kelli Snyder would not have qualified as an heir under the intestacy statute. He asserts that Milo Snyder, as the testator's son, would have been the sole taker of the homestead under the intestacy statute and, consequently, the homestead was not devised to an heir by Betty Snyder's will. Accordingly, he argues that the homestead property is not protected by the homestead provision and is subject to creditors' claims.
The trial judge disagreed with these assertions and found that the homestead provision protected the homestead from creditors in this case. The district court reversed, finding that because Milo Snyder would have been the sole heir had there been intestacy, Kelli Snyder is precluded from benefitting from the homestead provision's protections against creditors. In so finding, the district court explained its position as follows:
Section 731.201(18) defines "heirs" as "those persons, including the surviving spouse, who are entitled under the statutes of intestate succession to the property of a decedent." While Kelli Snyder is a lineal descendant of her grandmother, the decedent's adult son, Milo Snyder, is the only member of the next generation of "lineal descendant." A reference to "heirs" is generally considered as referring to those who inherit under the laws of intestate succession. See, e.g., Arnold v. Wells, 100 Fla. 1470, 131 So. 400 (1930). If Betty Snyder had died intestate, Milo Snyder would have inherited everything as her "heir," i.e., next lineal descendant in line, and Kelli Snyder, under any construction of section 732.103, would have inherited nothing. This would be so because inheritance in Florida is "per stirpes." § 732.104, Fla. Stat. (1993). Because Milo Snyder survived, Kelli Snyder is not an intestate "heir" of her grandmother. Therefore, for purposes of the homestead exemption inuring to "the heir of the decedent," as defined by intestate succession, the exemption cannot inure to Kelli Snyder.
681 So.2d at 1193. We granted review in order to answer the certified question. We note, though, that we have an additional basis for jurisdiction because this district court opinion expressly and directly conflicts with Walker v. Mickler, 687 So.2d 1328 (Fla. 1st DCA 1997), review granted, No. 89,922, 696 So.2d 343 (Fla. June 12, 1997).
The circumstances under which a homestead may be devised while still retaining its protections against creditors present a significant issue for both the legal profession and the public in general. All Floridians need to fully understand how their homestead property might be properly devised while still maintaining its protections against creditors (when there are no surviving spouses or minor children).[2]

THE HOMESTEAD PROVISION
The homestead provision has been characterized as "our legal chameleon."[3] Our constitution protects Florida homesteads in three distinct ways. First, a clause, separate and apart from the homestead provision applicable in this case, provides homesteads with an exemption from taxes.[4] Second, the homestead provision protects the homestead from forced sale by creditors.[5] Third, the homestead provision delineates the restrictions *1002 a homestead owner faces when attempting to alienate or devise the homestead property.[6] This case involves the second and third protections described above.
Homestead law in the United States has evolved over time and it is strictly an American innovation. In Florida, moreover, our case law surrounding the homestead provision has its own contours and legal principles. As a result, it is not susceptible to comparisons with similar provisions in other jurisdictions. Importantly, our courts have emphasized that, in Florida, the homestead provision is in place to protect and preserve the interest of the family in the family home. We recently reaffirmed that general policy by stating:
As a matter of public policy, the purpose of the homestead exemption is to promote the stability and welfare of the state by securing to the householder a home, so that the homeowner and his or her heirs may live beyond the reach of financial misfortune and the demands of creditors who have given credit under such law.
Public Health Trust v. Lopez, 531 So.2d 946, 948 (Fla.1988). Further, it is clear that the homestead provision is to be liberally construed in favor of maintaining the homestead property. See Butterworth v. Caggiano, 605 So.2d 56 (Fla.1992); Hubert v. Hubert, 622 So.2d 1049 (Fla. 4th DCA 1993); Moore v. Rote, 552 So.2d 1150 (Fla. 3d DCA 1989); In re Estate of Skuro, 467 So.2d 1098 (Fla. 4th DCA 1985), approved, 487 So.2d 1065 (Fla. 1986). As a matter of policy as well as construction, our homestead protections have been interpreted broadly.[7]
In addition, in 1984, the people further expanded homestead provision to substantially broaden the class of people eligible to take advantage of our homestead protections. While those protections had been previously limited to the "head of a family," they are now available to any "natural person." Compare art. X, § 4(a), Fla. Const.(1972)("There shall be exempt from forced sale under process of any court ... the following property owned by the head of a family") with art. X, § 4(a), Fla. Const. ("There shall be exempt from forced sale under process of any court... the following property owned by a natural person").
Finally, it is important to note that creditors are aware of the homestead provision and its inherent protections. As we discussed in Public Health Trust, we will not narrowly interpret the homestead provision simply because "financially independent heirs" may receive a windfall. 531 So.2d at 950. There we wrote:
The homestead protection has never been based on principles of equity, see Bigelow [v. Dunphe, 143 Fla. 603, 197 So. 328 (1940) ], but always has been extended to the homesteader and, after his or her death, to the heirs whether the homestead was a twenty-two room mansion or a two-room hut and whether the heirs were rich or poor.
Id. Creditors have been on notice for many years that the plain language of the constitution protects homestead property from most creditors.
It is with these policy considerations in mind that we address the two major issues in this case.

DEVISEES OF A HOMESTEAD MAY BE ENTITLED TO THE HOMESTEAD PROVISION'S PROTECTIONS AGAINST CREDITORS
The first question we must resolve is whether the protection against creditors found in the homestead provision can be transferred, with a will, to a devisee. This Court has never addressed whether the term "heirs" in the homestead provision includes devisees.
Under the common law, an heir was a person designated to inherit in the event of intestacy at the death of the decedent. Now, however, "the term is frequently used in a popular sense to designate a successor to property either by will or by law." Black's *1003 Law Dictionary 724 (6th ed. 1990)("Word `heirs' is no longer limited to designated character of estate as at common law.") If we define the term "heirs" in the homestead provision by its strict common-law definition, the very act of devising the homestead would abolish the homestead protections against creditors. We refuse to construe the homestead provision in such a narrow way. In reaching this conclusion, we are persuaded by the reasoning of the Third District Court of Appeal, sitting en banc, in Bartelt v. Bartelt, 579 So.2d 282 (Fla. 3d DCA 1991). That court addressed the situation in which the decedent, who died without a surviving spouse but with two surviving adult children, a son and a daughter, devised his homestead only to his son. There, the district court held that the homestead exemption passed to the devisee through the will even though the omitted child would have been entitled to an equal share of the homestead had the decedent died intestate. In so holding, the Bartelt court stated:
When the decedent's homestead is devised to his sona member of the class of persons who are the decedent's "heirs"the constitutional exemption from forced sale by the decedent's creditors found in Article X, Section 4(b) of the Florida Constitution, inures to that son. The test is not how title was devolved, but rather to whom it passed....
The personal representative argues that, although "heirs" may avail themselves of the constitutional protection from creditors, "devisees" may not. Section 731.201(18), Florida Statutes (1989), defines heirs or heirs at law as "those persons... who are entitled under the statutes of intestate succession to the property of a decedent." Devisees are defined in section 731.201(9) as persons "designated in a will to receive a devise." According to the personal representative, a devisee cannot be an heir because a devisee takes by will and an heir takes only where there is no will. We disagree. Heirs, as defined in section 731.201(18), are simply those persons entitled to receive property under the laws of intestacy; the decedent's son, as his lineal descendant, is a member of that class. § 732.103(1), Fla. Stat. (1989). The class designated as "heirs" does not exclude those who, but for the decedent's foresight in executing a will, would have taken by the laws of intestate succession.... Article X, section 4 of the Florida Constitution defines the class of persons to whom the decedent's exemption from forced sale of homestead property inures; it does not mandate the technique by which the qualified person must receive title.
Id. at 283-84. An academic commentator on this subject writes approvingly of the result reached by that district court:
This author supports the Bartelt decision. The constitutional exemption from forced sale by creditors, as found in article X, § 4(b) of the Florida Constitution, inures to the surviving spouse or heirs of the owner. Bartelt includes within the term "heirs" devisees who but for the will would have been heirs. It properly takes a broad gauged approach to the constitutional terminology. It places substance over form. The persons involved as takers are the same whether there is a will or there is not a will. The court points out that without such a determination, with respect to homestead, Florida residents would be discouraged from making wills and would be encouraged to let the property in issue pass by intestate succession. Such a result would be an anathema.
1 David T. Smith, Florida Probate Code Manual § 4.05, at 29-30 (1995).
We agree that, in cases in which there is no surviving spouse or minor children, the protections against creditors found in the homestead provision may inure to the benefit of the person to whom the homestead property is devised by will. As explained below, though, the class of persons to which such protections may be devised is limited.

THE CLASS OF DEVISEES TO WHICH THE PROTECTIONS AGAINST CREDITORS FOUND IN THE HOMESTEAD PROVISION MAY BE DEVISED
Having found that the protections against creditors found in the homestead provision *1004 may be devised by will, we now must define the scope of the class of persons to which those protections may be so devised. The Davis court and the Walker court present us with two alternatives. First, the Davis court defined the word "heirs" narrowly and found that, in order to preserve the protection against creditors, a devisee had to be entitled to inherit the homestead property under the intestacy statute. The Walker court applied a broader definition of the term "heirs." It held that the protections against creditors could be devised to any of the class of potential heirs under the intestacy statute. It found no occasion to require that a testator leave the homestead property to the actual person or persons who would have actually inherited under the intestacy statute. These two views of the term "heirs" can be characterized as the "entitlement definition" and the "class definition," respectively.
We are persuaded by the Walker court's view. In a situation almost identical to that in this Davis case, the First District Court held that a decedent's grandson was entitled to the homestead protection even though the grandson was not the closest consanguine heir. In doing so, the court found that any person categorized in the intestacy statute was an heir for the purpose of the homestead provision. In particular, it wrote:
Article X, section 4(b) of the Florida Constitution provides that the exemptions and protections established for homestead property under article X, section 4(a) "shall inure to the surviving spouse or heirs of the owner." As this court explained in State Department of Health and Rehabilitative Services v. Trammell, 508 So.2d 422 (Fla. 1st DCA 1987), the term "heir" under article X, section 4(b) means "those who may under the laws of the state inherit from the owner of the homestead." Id. at 423, quoting Shone v. Bellmore, 75 Fla. 515, 78 So. 605, 607 (Fla.1918). Because Bavle, as the decedent's grandson, was a lineal descendent of the decedent, he is a member of the class of persons entitled to receive property under the laws of intestacy, see sections 732.103(1) and 732.401(1), Florida Statutes (1993), and accordingly, is an "heir" for the purposes of article X, section 4(b). See, Bartelt v. Bartelt, 579 So.2d 282, 283-4 [84] (Fla. 3d DCA 1991). A remainderman is entitled to claim a homestead exemption. Hubert v. Hubert, 622 So.2d 1049 (Fla. 4th DCA 1993), rev. denied, 634 So.2d 624 (Fla. 1994).
687 So.2d at 1329.
The Walker court expressly rejected the holding of the Davis court. It wrote:
We find the Davis opinion contrary to the purpose of the homestead exemption from forced sale. We start with the well-established principle that the laws regarding homestead exemption are to be liberally construed. Jetton Lumber Co. v. Hall, 67 Fla. 61, 64 So. 440 (1914); and In re Estate of Skuro, 467 So.2d 1098 (Fla. 4th DCA 1985), aff'd, 487 So.2d 1065 (Fla. 1986). Although the constitution is silent as to the intent of the drafters with respect to the rights of creditors of estates, we conclude that, as amended in 1984, article V, section 4(b), however, does reflect the intent that the exemption is to inure to whomever the homestead property passes.
Id. at 1330. The Walker court grounded its conclusion on the following policy consideration:
It seems clear to us that the intent of the homestead exemption is to protect the decedent's homestead from the decedent's creditors for the benefit of the decedent's heirs. To deny the exemption for a homestead property simply because the person chosen by the decedent to receive the property under the will, even though that person is within the class of persons entitled to take under the laws of intestate succession, is not the closest consanguine heir, is contrary to that constitutional intent.
Id. at 1331.
The Walker court, it seems to us, announces the correct view of our homestead provision. Indeed, the approach used by the Davis court would force a testator to guess as to his or her survivors in order to successfully devise, by will, the homestead property with the protections against creditors intact. That reading of our constitution is, in our view, unreasonable. If a severe limitation is *1005 to be placed on the ability of Floridians to keep the homestead within the family, it should not be done by a narrow judicial construction of the homestead provision.
We are reinforced in our view when the ramifications of the alternative position are considered. Under the Davis court's reasoning, an attorney would be faced with giving the following illogical advice to a potential testator with no surviving spouse or minor children:
You have two bad choices. You can devise your homestead to any person you choose. If you do, though, the homestead provision's protections against creditors will be inapplicable and your homestead may be subject to forced sale. On the other hand, you can guess as to which family members will survive you. After we have established the list of your guesses, I can tell you which of those family members would inherit under our intestacy statute. If you leave your homestead to those family members and they really do survive you, the homestead provision's protections against creditors will remain intact. If you guess incorrectly, though, the protections against creditors will be inapplicable. The point is this: If you want to ensure protection of the homestead property against creditors under our constitution, you have no choice as to which family member might best maintain your homestead property. The law requires that in order to utilize the homestead provision's protections against creditors, the homestead property must pass to the person or persons dictated by the intestacy statute.
Creating a system, by engaging a narrow judicial construction of the homestead provision, in which this type of advice must be given is unreasonable. Will-making, in these circumstances, becomes an act of prophecy. Clearly, as a policy matter, we should not be encouraging intestacy as a means of distributing one's property. In many instances where there is no surviving spouse or minor children, the homestead property is the most significant part of a testator's estate. If a testator loses control over the disposition of his or her homestead property, the need for a will is effectively eliminated. Such an approach takes away from the testator any ability to make a choice as to which family member will best preserve and maintain the family homestead. Instead, it promotes absolute adherence to the strict priorities found in the intestacy statute without paying any respect to the needs of individual testators and their families.
The whole purpose of the homestead provision is to protect and maintain the family homestead. The testator is likely in the best position to know which family member is most likely to need or to properly maintain the homestead. A plain reading of the homestead provision establishes that it only prohibits devising the homestead property when the testator is survived by a spouse or minor children. There is no prohibition against devising the homestead property to any of that class of persons who could potentially receive the homestead property under the intestacy statute. We must emphasize, however, that today's ruling does not authorize a testator to devise homestead property to any person not categorized by our intestacy statute with any expectation that the protections against creditors will survive such a devise. See State Dep't of Health & Rehabilitative Servs. v. Trammell, 508 So.2d 422 (Fla. 1st DCA 1987)(holding that a devise of homestead to a good friend does not qualify for the homestead exemption).

CONCLUSION
We have consistently made it clear that the homestead provision must be given a broad and liberal construction. In the context of this case, we reject the narrow entitlement definition of the term "heirs" that includes only those people who would inherit under the intestacy statute at the death of the decedent. Instead, we hold that the homestead provision allows a testator with no surviving spouse or minor children to choose to devise, in a will, the homestead property, with its accompanying protection from creditors, to any family member within the class of persons categorized in our intestacy statute.
Accordingly, we answer the certified question in the affirmative, quash the decision of *1006 the district court in Davis, and approve the district court's opinion in Walker.
It is so ordered.
KOGAN, C.J., and SHAW, WELLS and ANSTEAD, JJ., concur.
GRIMES, J., dissents with an opinion in which HARDING, J., concurs.
HARDING, J., dissents with an opinion.
GRIMES, Justice, dissenting.
The word "heirs" as used in article X, section 4(b) of the Florida Constitution means exactly what Florida lawyers and judges have commonly understood it to mean for many decades. That is, a person's heirs are those persons who inherit from the decedent under the law when the decedent dies intestate.
The pertinent constitutional language has been essentially the same since the adoption of the 1885 constitution. In Scull v. Beatty, 27 Fla. 426, 436, 9 So. 4, 7 (1891), this Court said:
The language of the Constitution is: "The exemptions provided for ... shall accrue to the heirs of the party having enjoyed or taken the benefit of such exemption." The statute of descents fixes who are the heirsin this case, the children of James Beatty, deceased.
Interpreting this decision in Shone v. Bellmore, 75 Fla. 515, 522, 78 So. 605, 607 (1918), we stated:
In this connection the word "heirs" means those who may under the laws of the State inherit from the owner of the homestead.
Accord State Dep't of Health & Rehabilitative Servs. v. Trammell, 508 So.2d 422 (Fla. 1st DCA 1987). It is well established that heirs are determined after death, depending on who survives the testator. Williams v. Williams, 149 Fla. 454, 6 So.2d 275 (1942); Pitts v. Pitts, 120 Fla. 363, 162 So. 708 (1935); Stone v. Citizens' State Bank, 64 Fla. 456, 59 So. 945 (1912).
The majority has now defined heirs to mean a class of heirs. Yet, section 731.201(18), Florida Statutes (1993), states that the word "heirs" means "those persons, including the surviving spouse, who are entitled under the statutes of intestate succession to the property of a decedent." (Emphasis added.) Under the rationale of the majority, the homestead exemption could accrue to the kindred of the last deceased spouse of the decedent, section 732.103(5), Florida Statutes (1993), even though they would not be entitled to the decedent's property through intestate succession because lineal descendants closer in consanguinity to decedent survived.
I would adopt the cogent analysis of the court below which explained:
Where there is no surviving spouse or minor child, the decedent's homestead may be devised without limitation. Art. X, § 4(c), Fla. Const. Homestead property can be devised through the residuary clause in a decedent's will. Estate of Murphy, 340 So.2d 107 (Fla.1976). In a devise of a homestead to a spouse or heir of the testator/testatrix the exemption from forced sale inures to the benefit of the devisee. Bartelt v. Bartelt, 579 So.2d 282 (Fla. 3d DCA 1991). The question therefore is simply whether Kelli Snyder, the devisee of the homestead, is an heir as contemplated by article X, section 4, of the Florida Constitution and as defined in sections 731.201(18) and 732.103. If she is, she is thereby entitled to the protection of article X, section 4(b) of the Florida Constitution.
Section 731.201(18) defines "heirs" as "those persons, including the surviving spouse, who are entitled under the statutes of intestate succession to the property of a decedent." While Kelli Snyder is a lineal descendant of her grandmother, the decedent's adult son, Milo Snyder, is the only member of the next generation of "lineal descendant." A reference to "heirs" is generally considered as referring to those who inherit under the laws of intestate succession. See, e.e., Arnold v. Wells, 100 Fla. 1470, 131 So. 400 (1930). If Betty Snyder had died intestate, Milo Snyder would have inherited everything as her "heir," i.e., next lineal descendant in line, and Kelli Snyder, under any construction of section 732.103, would have inherited *1007 nothing. This would be so because inheritance in Florida is "per stirpes." § 732.104, Fla. Stat. (1993). Because Milo Snyder survived, Kelli Snyder is not an intestate "heir" of her grandmother. Therefore, for purposes of the homestead exemption inuring to "the heir of the decedent," as defined by intestate succession, the exemption cannot inure to Kelli Snyder.
Davis v. Snyder, 681 So.2d 1191, 1193 (Fla. 2d DCA 1996).
I respectfully dissent.
HARDING, J., concurs.
HARDING, Justice, dissenting.
I dissent. The majority opinion does violence to the rules of constitutional and statutory construction, the principles of stare decisis, and the doctrine of separation of powers.
The majority ignores section 731.201(18), Florida Statutes (1995), which clearly defines heirs: "`Heirs' or `heirs at law' means those persons, including the surviving spouse, who are entitled under the statutes of intestate succession to the property of a decedent." The majority opinion also overlooks those cases in which we have approved the statutory definition in relation to homestead. The majority does refer to Black's Law Dictionary, which uses a 1970 California Court of Appeal opinion[8] for the proposition that "heirs" is no longer limited to its technical definition. Majority op. at 1002-03. But Black's goes on to cite another California Court of Appeal opinion decided two years later which contradicts that position: "Word heirs is a technical term and is used to designate persons who would, by statute, succeed to an estate in case of intestacy." Black's Law Dictionary 724 (6th ed.1990) (citing Wells Fargo Bank v. Title Insurance & Trust Company, 22 Cal.App.3d 295, 99 Cal.Rptr. 464, 466 (1972)). Although neither Black's nor the California appellate courts are binding authority in this state, this second definition reflects Florida's law as defined by section 731.201(18) and numerous opinions of this Court. The majority does not address the section, nor does it distinguish any of the cases in which this Court has used the statute to define "heirs."
The majority extols the virtue of "broadening and liberalizing" our definition in favor of maintaining the homestead property. Majority op. at 1002. While there may be compelling policy reasons to include the decedent's granddaughter as an "heir" in order to preserve the homestead status of the property, the statute is clear and unambiguous. In this case she is not an heir. To ignore the statute or interpret it more broadly than the terms of its plain language amounts to creating law, which is more properly the office of the legislature. To do so by a court opinion violates the doctrine of separation of powers, the role of the court in statutory construction cases.
As Justice Grimes points out in his dissent, this Court has generally approved the definition of "heirs" as those defined who take under the statute of descents or the laws of the state and specially the definition contained in section 731.201(18). Grimes, J., dissenting op. at 1006; See also, e.g., Public Health Trust of Dade County v. Lopez, 531 So.2d 946, n. 2 (Fla.1988) ("The term `heirs' is defined by section 731.201(18), Florida Statutes (1985), as those persons entitled to the decedent's property under the statues of intestate succession."). I believe the following words concerning stare decisis from my dissent in State v. Schopp, 653 So.2d 1016, 1023 (Fla.1995) (Harding, J., dissenting), in which Justice Overton concurred, are equally applicable here:
The doctrine of stare decisis provides stability to the law and to the society governed by that law. While no one would advocate blind adherence to prior law, certainly a change from that law should be principled. Where a rule of law has been adopted after reasoned consideration and then strictly followed over the course of years, the rule should not be abandoned without a change in the circumstances that justified its adoption....
As Justice Overton stated in his concurrence in Perez v. State, 620 So.2d 1256, *1008 1259 (Fla.1993) (Overton, J., concurring), "adhering to precedent is an essential part of our judicial system and philosophy."
State v. Schopp, 653 So.2d 1016, 1023 (Fla. 1995) (Harding, J., dissenting). I would adhere to the statutory definition of "heirs" heretofore followed by this Court.
I also find the majority's reliance upon Bartelt to be misplaced. The language quoted by the majority opinion does not support the proposition that a grandchild can become an "heir" to extend the homestead status of property when there is a surviving child as well. In fact, Bartelt reaffirms that heirs as defined in section 731.201(18) are "simply those persons entitled to receive property under the laws of intestacy." Bartelt, 579 So.2d at 284. In Bartelt, the decedent had a son and a daughter but devised the homestead property only to the son.[9] The district court held that the homestead privileges inured to the son even though he obtained the homestead property by devise rather than through intestacy. The court held that the property maintained its homestead status because it was devised to one who would have received the property as an heir through intestacy, stating, "The test is not how title was devolved, but rather to whom it passed." Bartelt, 579 So.2d at 283. In Bartelt, the property passed to one who would have received it under the laws of intestate succession. In the instant case, it did not.
The district court in the instant case correctly interpreted the statute. After setting out section 731.201(18), the court held:
If Betty Snyder had died intestate, Milo Snyder would have inherited everything as her "heir," i.e., next lineal descendant in line, and Kelli Snyder, under any construction of section 732.103, would have inherited nothing.... Because Milo Snyder survived, Kelli Snyder is not an intestate "heir" of her grandmother. Therefore, for purposes of the homestead exemption inuring to "the heir of the decedent," as defined by intestate succession, the exemption cannot inure to Kelli Snyder.
Snyder, 681 So.2d at 1193. This comports with the statute enacted by the legislature and our history of case law. I believe this is the proper result.
The majority approves the conflicting decision in Walker v. Mickler, 687 So.2d 1328 (Fla. 1st DCA 1997), where the district court held that a grandchild could become an "heir" and thus extended the homestead status of property to protect it from forced sale by creditors. The Walker court quoted our decision in Public Health Trust as describing the "broad purpose of the exemption in protecting the homestead." Walker, 687 So.2d at 1330. But in Public Health Trust, this Court merely held that the homestead exemption was not limited to the head of a family but could be enjoyed by any natural person and that heirs did not have to be dependent on the homestead owner. Public Health Trust, 531 So.2d at 951. As previously noted, the majority opinion included a footnote attached to the word "heirs," stating: "The term `heirs' is defined by section 731.201(18), Florida Statutes (1985), as those persons entitled to the decedent's property under the statutes of intestate succession." Public Health Trust, 531 So.2d at 951, n. 6. The majority here does not distinguish, recede from, or explain our statement in Public Health Trust regarding the definition of "heirs." Even in that case, where we recognized the broad purpose behind the homestead exemption, we followed the plain language of the statutory definition of "heirs."
Because I can find nothing in the majority opinion to support the newly expanded interpretation of "heirs" except reliance on the flawed analysis from Walker, and because I think such an expansion invades the province of the legislature and ignores the prior holdings of this Court, I am compelled to dissent.
NOTES
[1] Actual heirs are only determined upon death.
[2] The issue was addressed in a recent publication from the Real Property, Probate, and Trust Law Section of the Florida Bar. Carlos A. Rodriguez, Inurement of the Real Property Homestead Exemption to Devisees of the Owner, XX Actionline 4 (April-May 1997).
[3] Harold B. Crosby & George John Miller, Our Legal Chameleon, the Florida Homestead Exemption: I-III, 2 U. Fla. L.Rev. 12 (1949); Harold B. Crosby & George John Miller, Our Legal Chameleon, the Florida Homestead Exemption: IV, 2 U. Fla. L.Rev. 219 (1949); Harold B. Crosby & George John Miller, Our Legal Chameleon, the Florida Homestead Exemption: V, 2 U. Fla. L.Rev. 346 (1949); J. Allen Maines & Donna Litman Maines, Our Legal Chameleon Revisited: Florida's Homestead Exemption 30 U. Fla. L.Rev. 227 (1978); Donna Litman Seiden, An Update on the Legal Chameleon: Florida's Homestead Exemption and Restrictions, 40 U. Fla. L.Rev. 919 (1988).
[4] See art. VII, § 6, Fla. Const.
[5] See id. art. X, § 4(a)-(b).
[6] See id. art. X, § 4(c).
[7] See Tramel v. Stewart, 697 So.2d 821 (Fla.1997)(liberally construing homestead provision in the face of a attempted forfeiture action against homestead property).
[8] Jay v. Dollarhide, 3 Cal.App.3d 1001, 84 Cal. Rptr. 538, 547 (1970): "The word `heirs' is no longer limited to designating the character of the estate, as at common law."
[9] The daughter did not contest the devise of the entire homestead to the son.