921 So.2d 693 (2006)
Michael ENGELKE, Appellant,
v.
ESTATE OF Paul ENGELKE, Appellee.
No. 4D04-2454.
District Court of Appeal of Florida, Fourth District.
February 8, 2006.
*694 Shelley H. Leinicke of Wicker, Smith, O'Hara, McCoy, Graham & Ford, P.A., Fort Lauderdale, for appellant.
James R. George of Ruden, McClosky, Smith, Schuster & Russell, P.A., Fort Lauderdale, for appellee.
WARNER, J.
A trustee of a decedent's inter vivos revocable trust appeals an order of the probate court requiring the trust, of which the primary asset is a one-half interest in decedent's residence, to pay expenses not covered by estate assets, based upon the provisions of the trust instrument. The trustee claims that the residence is covered by Florida's constitutional homestead protections and cannot be used to pay the debts of the estate. Because the decedent retained all control over his homestead during his lifetime, conveying no vested property interest in the homestead to the trust, we hold that homestead protections attached to the residence. We reverse the order of the trial court.
Paul Engelke died testate, survived by his spouse, Judy, and three adult children from a previous marriage. Prior to their marriage, Paul and Judy entered into an antenuptial agreement in which they both waived their homestead rights under article X, section 4(c) of the Florida Constitution. When they purchased their home, they took title to the property jointly. Later, they each transferred their individual one-half interest in the home to their respective inter vivos revocable trusts. Paul was the trustee of his trust. The trust instrument provided that after his death Judy would have the right to live in the residence during her lifetime, provided that she pay all of the expenses to maintain the home. Upon her death or removal from the home, Paul's children would receive the property through the residuary provisions of the trust. At the present time, Judy's trust owns a one-half interest in the home, and she continues to reside there. Pursuant to Judy's trust, upon her death the beneficiaries of her trust will be entitled to her one-half interest in the home.
Article IV, paragraph A, of Paul Engelke's revocable trust provides as follows:
Except as otherwise specifically provided in this Article, upon the death of Grantor, to the extent that Grantor's residuary probate estate shall have insufficient liquidity as so certified by the Personal Representative of Grantor's estate, Trustee shall pay from the trust estate: (1) ...; and (2) all of Grantor's funeral expenses, claims allowable against Grantor's estate, costs of last illness and costs of the administration of Grantor's estate including ancillary.
When Paul died, the value of his probate estate was approximately $61,000. The value of his trust consisted of approximately $10,000 in cash plus the one-half interest *695 in the home, worth around $850,000 and encumbered by a $133,000 mortgage.
Judy, as personal representative of Paul's estate, certified to Paul's successor trustee, his son Michael, that the estate's assets were insufficient to pay the claims against the estate. Additionally, the trial court ordered the personal representative to pay a family allowance to Judy, but the estate did not have funds to pay the allowance. Judy moved to compel the trustee to transfer property from the trust to the estate to pay these charges. Michael opposed the motion on the ground that the trust contained insufficient liquid assets to pay the claims, and the remaining trust asset is the half interest in the home, protected by the homestead provision of the Florida Constitution. After an evidentiary hearing as to the amount of the claims, the trial court granted Judy's motion, finding the trust responsible for payment of the claims and expenses not covered by the estate assets. Michael filed a petition for writ of certiorari in this court, which we have designated as an appeal of an order under Florida Rule of Appellate Procedure 9.110(a)(2).
Michael, as trustee, argues that the probate court erred in ordering the trustee to pay the claims and expenses of the estate in excess of the liquid assets of the trust. The trustee argues that the primary trust asset, the one-half tenant in common interest in the marital residence, is constitutionally protected homestead property and, as a result, cannot be used to pay the amounts certified by the personal representative. Judy counters that the trust instrument expressly directed that upon Paul's death, the trustee would pay his funeral expenses, claims allowable against his estate, costs of last illness, and costs of the administration of his estate to the extent that the probate estate had insufficient liquidity to pay the claims certified by his personal representative. Therefore, by the requirement to pay expenses from the trust, the trustee is required to pay these expenses even though it requires depletion of the homestead. We agree with Michael that the property was homestead and entitled to the constitutional protection against sale for creditors of Paul's estate.
Article X, section 4 of the Florida Constitution provides, in pertinent part:
(a) There shall be exempt from forced sale under process of any court, and no judgment, decree or execution shall be a lien thereon, except for the payment of taxes and assessments thereon, obligations contracted for the purchase, improvement or repair thereof, or obligations contracted for house, field or other labor performed on the realty, the following property owned by a natural person: (1) a homestead, ...;
(b) These exemptions shall inure to the surviving spouse or heirs of the owner.
(c) The homestead shall not be subject to devise if the owner is survived by spouse or minor child, except the homestead may be devised to the owner's spouse if there be no minor child. The owner of homestead real estate, joined by the spouse if married, may alienate the homestead by mortgage, sale or gift....
Florida courts have consistently emphasized that the homestead exemption is to be liberally construed in the interest of protecting the family home against the claims of creditors. See Havoco of Am., Ltd. v. Hill, 790 So.2d 1018, 1020 (Fla. 2001). In Snyder v. Davis, 699 So.2d 999 (Fla.1997), our supreme court explained that the Florida Constitution protects homesteads in "three distinct ways." Id. at 1001. First, the constitution provides homesteads with an exemption from taxes. Id. Second, the constitution protects the *696 homestead from forced sale by creditors. Id. Third, the homestead provision sets forth the restrictions a homestead owner faces when attempting to alienate or devise the homestead property. Id. at 1001-02. The Snyder court held that the term "heirs" in article X, section 4(b) is not limited to the person or persons who would actually take the homestead by law in intestacy on the death of the decedent; rather, the term "heirs" encompasses any of that class of persons categorized in the intestacy statute, section 732.103, Florida Statutes. Id. at 1000.
We note that in this case while Paul's residence was held in a revocable trust, it was owned by a "natural person" for purposes of the constitutional homestead exemption. Because Paul retained a right of revocation, he was free to revoke the trust at any point in time. Accordingly, he maintained an ownership interest in his residence, even though a revocable trust held title to the property. We therefore conclude that Paul's interest in his residence as beneficiary of his own revocable trust would entitle him to constitutional homestead protections. See Bessemer Props. v. Gamble, 158 Fla. 38, 27 So.2d 832, 833 (1946) (stating that "a one-half interest, the right of possession, or any beneficial interest in land gave the claimant a right to exempt it as his homestead").
The constitutional homestead protections applied even though Paul held only a one-half interest in the residence. In Cain v. Cain, 549 So.2d 1161 (Fla. 4th DCA 1989), we recognized that a husband's undivided one-half interest in the former marital residence could constitute his homestead for purposes of the constitutional exemption from forced sale. Likewise, Paul's undivided one-half interest in his permanent residence was protected by the constitutional homestead provisions.
Judy waived her homestead rights in the antenuptial agreement, and her waiver is the legal equivalent of predeceasing Paul. See City Nat'l Bank of Fla. v. Tescher, 578 So.2d 701 (Fla.1991). Thus, Paul's homestead could be devised or alienated in accordance with the provisions of the constitution. Because Judy waived her homestead rights as a spouse, and Paul had no minor children, he was able to convey his property free of the restrictions of article X, section 4(c) of the constitution. However, the property continued to remain his homestead, and Article I(a) of the trust agreement so indicates. Thus, the homestead continued to retain the constitutional protections provided in sections 4(a) and (b). Paul's homestead interest was protected from creditors by section 4(a) while he was alive, and his heirs can claim the exemption for themselves under section 4(b), even though they retain only a remainder interest in the property. See Hubert v. Hubert, 622 So.2d 1049 (Fla. 4th DCA 1993).
A homestead devised to an heir is protected from forced sale to pay the expenses of administering the estate. See Thompson v. Laney, 766 So.2d 1087 (Fla. 3d DCA 2000). It is only when the testator directs that a freely devisable homestead be sold and distributed to a devisee that the constitutional protection from creditors is disregarded. See Knadle v. Estate of Knadle, 686 So.2d 631 (Fla. 1st DCA 1996). In such a case, the decedent has devised money and not the homestead itself. Otherwise, the homestead protections against forced sale attach upon the moment of the owner's death. See In re Estate of Hamel, 821 So.2d 1276, 1280 (Fla. 2d DCA 2002)(stating, "If the property is homestead on the date of death, the homestead protection is impressed upon the land and the protection from creditors' *697 claims inures to the benefit of the heirs to whom the property is devised.").
Here, Paul used a revocable living trust to hold title to his homestead. We do not think that the use of the trust removes the homestead protection to his heirs, to whom the property ultimately passes. Revocable living trusts are widely used will-substitute devices that provide flexibility in managing the settlor's assets during his or her lifetime. In other contexts, revocable trusts are treated similarly to wills. See, e.g., § 732.4015, Fla. Stat. (2005) (treating disposition by trust of grantor's homestead as a "devise" where grantor is survived by spouse or minor child); see also Johns v. Bowden, 68 Fla. 32, 66 So. 155 (1914) (retention of entire beneficial estate in grantor during his lifetime makes revocable trust in the nature of a testamentary disposition of homestead property); In re Johnson's Estate, 397 So.2d 970 (Fla. 4th DCA 1981). Frequently, as here, the trust contains provisions regarding payment of expenses of the estate after the settlor's death. We have found no case in which a general direction to pay the estate expenses has trumped the constitutional homestead protections which are the rights of the heirs as much as the decedent. Because revocable trusts are merely will substitute devices, we see no reason why the reasoning of Thompson v. Laney, precluding use of the homestead to satisfy estate debts, should not apply with equal force when homestead property is transferred through a revocable trust. Therefore, unless the trust specifically directs that the freely devisable homestead be sold, the rights of the heirs attach at the death of decedent, and the property is protected from the claims of all creditors. Knadle, supra.
Here, the provisions of the revocable trust effective upon Paul's death provided generally that the trustee would pay any expenses that the estate could not pay. Yet the trust also specifically directed that the homestead be available to Judy during her lifetime with Paul's children to receive it following the termination of Judy's interest. The trust cannot be read as requiring the sale of the homestead. In fact, the opposite conclusion must be drawn.
Because the sole asset of the trust is the protected homestead, compliance with the trial court's order would require a sale or further encumbrance of the homestead property. Concluding that the heirs who receive the homestead upon termination of the trust are protected from the residence's forced sale for the claims of creditors by section 4(b), we reverse the order compelling payment of such claims from the trust to the extent that it would require the sale or encumbrance of homestead property.
We affirm as to the other issues raised.
GUNTHER and HAZOURI, JJ., concur.