963 So.2d 873 (2007)
Clyde COY, Appellant,
v.
MANGO BAY PROPERTY AND INVESTMENTS, INC., Union Title Corporation, American Pioneer Title Company, and Marie Coy, Appellees.
No. 4D06-3523.
District Court of Appeal of Florida, Fourth District.
August 22, 2007.
Rehearing Denied October 5, 2007.
*874 Mary M. Cantwell of Markcity, Rothman & Cantwell, P.A., Plantation, for appellant.
Michael L. Grant and Michael A. Weeks of Ward, Damon & Posner, P.A., West Palm Beach, for appellee Mango Bay Property and Investments, Inc.
Kenneth S. Pollock and Gary R. Shendell of Shendell & Pollock, P.L., Boca Raton, for appellee Union Title Corporation.
PER CURIAM.
Appellant, Clyde Coy, intervenor, appeals the denial of his Motion to Prohibit Sale/Motion to Freeze Proceeds from Sale in a mortgage foreclosure action, arguing that the subject property is his homestead. We agree that the trial court in the foreclosure action erred in denying Appellant's motion without first determining whether Appellant had a protected homestead right in the subject property. Accordingly, we reverse the order denying his motion and remand for an evidentiary hearing to determine whether the property is Appellant's homestead.
Appellant and his wife, Marie Coy, were married on June 15, 1955. In 1979, the Coys purchased a home in Hollywood, Florida, where they lived for the next twenty-four years and raised five (5) children. It is undisputed that record title to the home was held in Marie Coy's name only. Title was held in Marie Coy's name without complication until October 2001, when, without the knowledge or consent of Appellant and without his joinder on the mortgage agreement, Marie Coy offered the home as security for a mortgage loan with appellee, Mango Bay Property and Investments Inc. (Mango Bay). In February 2002, Marie Coy executed a second mortgage on the home without the knowledge or consent of Appellant and without his joinder on the mortgage agreement.
The Coys separated in 2003, and Marie Coy filed for divorce and for a restraining order. The trial court in the dissolution proceeding (family court) entered an injunction awarding Marie Coy temporary exclusive use and possession of the marital home. The order also prohibited the parties from selling any of the marital property without court order: "Parties shall not sell, destroy, or give away any marital property."
Meanwhile, while the divorce proceedings were pending, Mango Bay filed a foreclosure action against Marie Coy. The complaint alleged that Marie Coy defaulted on the payment of the mortgage loan executed on February 20, 2002. In August 2003, Appellant filed a motion to intervene in the foreclosure proceeding on the grounds that at the time that Marie Coy executed the mortgage in February 2002, Marie and Appellant were living in the subject property together as husband and wife and that the property is his homestead property. Appellant also filed a *875 complaint for declaratory relief against Mango Bay and Marie Coy seeking a declaration of his rights under the mortgage deed, objecting to the burden on his homestead property represented by the mortgage, and asking the court to declare the mortgage to be of no force and effect. The foreclosure court granted Appellant's motion to intervene and also entered a Final Judgment By Consent against Marie Coy and in favor of Mango Bay, declaring any rights that Marie Coy had in the property to be subordinate to Mango Bay's mortgage and finding that Marie Coy agreed to the foreclosure sale of the property to satisfy the amount owed pursuant to the mortgage.
In January 2006, the family court entered a final judgment dissolving the parties' marriage and awarding alimony. Due to a pending bankruptcy case involving Marie Coy, the trial court in the divorce proceeding bifurcated the equitable distribution issues that "pertain to the former marital home which is currently in foreclosure" and ordered "an automatic stay relative to the distribution of any marital assets or liabilities," and the family court advised that those issues would be addressed at a later date.
Meanwhile, in the foreclosure action, Appellant amended his complaint for declaratory relief, again objecting to the burden on his homestead represented by the mortgage and asking the court to declare the mortgage to be of no force or effect, and seeking damages. In June 2006, Mango Bay moved to schedule a foreclosure sale, alleging that Appellant was not the titled owner of the subject real property and did not reside in the subject property because of the restraining order, and that the proceeds from the sale of the home be used to pay Mango Bay the amount due under the note and mortgage, which was $114,876 plus interest. The next month, Marie Coy executed a Warranty Deed in which she sold the subject property to a third-party purchaser for $260,000.
Following the execution of the Warranty Deed, Appellant responded by filing a Motion to Prohibit Sale/Motion to Freeze Proceeds From Sale in the foreclosure action, arguing that he had an ownership interest in the home and requesting that the court enter an order prohibiting the sale and freezing the proceeds from the sale until resolution of the declaratory action. The foreclosure court denied Appellant's motion and ordered that the sale should not be set aside, that Mango Bay was entitled to the funds paying off the mortgage, that Mango Bay should file a satisfaction of mortgage and judgment and dismiss its case, and that the attorney for Marie Coy should hold the net sale proceeds until further order of the family court. In response to Appellant's objection that the sale violated his homestead rights, the foreclosure court ruled that it was leaving the homestead issue to the family court that would equitably distribute the proceeds of the sale and make findings with respect to homestead or ownership. Following this order, Mango Bay filed a Notice of Voluntary Dismissal with Prejudice in the foreclosure action. Appellant then filed the instant appeal.
After the appeal was filed, the family court found Marie Coy to be in civil contempt for sale of the marital home and awarded attorney's fees to Appellant. The family court also entered a Final Judgment in November 2006, reaffirming the terms of the January 2006 final judgment. The court found Marie Coy's sale of the marital home was "wrong, contemptuous, inappropriate and inexcusable." The court ordered certain disbursements be paid out of the $86,700 in trust for Marie Coy from the sale of the marital home, with the remainder to be divided equally between *876 Marie Coy and Appellant. The court did not make any finding with respect to homestead.
Appellant argues on appeal that the foreclosure court's order denying his motion to prohibit sale of the home without first determining whether the subject property was his homestead violates his constitutionally protected homestead right against forced sale. Furthermore, Appellant argues that the court's failure to hold an evidentiary hearing on the issue violates his due process rights. We agree with Appellant that the foreclosure court erred in permitting the sale of the marital home without first determining whether the property was Appellant's homestead.
"Homestead" is broadly defined by the Florida Constitution as:
Property owned by a natural person . . . to the extent of one hundred sixty acres of contiguous land and improvements thereon . . .; of if located within a municipality, to the extent of one-half acre of contiguous land, upon which the exemption shall be limited to the residence of the owner or the owner's family.
S. Walls, Inc. v. Stilwell Corp., 810 So.2d 566, 569-70 (Fla. 5th DCA 2002)(citing Art. X, § 4(a)(1), Fla. Const.); see also Gold v. Schwartz, 774 So.2d 879, 880 (Fla. 4th DCA 2001).
Article X section 4 of the Florida Constitution provides:
(a) There shall be exempt from forced sale under process of any court, and no judgment, decree, or execution shall be a lien thereon, except for the payment of taxes and assessments thereon, obligations contracted for the purchase, improvement or the repair thereof, or obligations contracted for house, field, or other labor performed on the realty, the following property owned by a natural person:
(1) a homestead, if located outside a municipality, to the extent of one hundred sixty acres of contiguous land and improvements thereon . . .; or if located within a municipality, to the extent of one-half acre of contiguous land, upon which the exemption shall be limited to the residence of the owner or the owner's family.
(b) These exemptions shall inure to the surviving spouse or heirs of the owner.
(c) The homestead shall not be subject to devise if the owner is survived by spouse or minor child, except the homestead may be devised to the owner's spouse if there be no minor child. The owner of homestead real estate, joined by the spouse if married, may alienate the homestead by mortgage, sale, or gift and, if married, may by deed transfer the title to an estate by the entirety with the spouse . . .
Art. X, § 4, Fla. Const. (1968 as amended) (emphasis added).
Florida courts have consistently emphasized that the homestead exemption is to be liberally construed in the interest of protecting the family home against the claims of creditors. See Engelke v. Estate of Engelke, 921 So.2d 693, 695 (Fla. 4th DCA 2006). In Snyder v. Davis, 699 So.2d 999, 1001 (Fla.1997), our supreme court explained:
The purpose of the homestead exemption is to promote the stability and welfare of the state by securing to the householder a home, so that the homeowner and his or her heirs may live beyond the reach of financial misfortune and the demands of creditors who have been given credit under such law.
The court further explained that the Florida Constitution protects homesteads in three distinct ways. Id. at 1001. First, the constitution protects homesteads with an exemption from taxes. Id. Second, the *877 constitution protects the homestead from forced sale by creditors. Id. Third, the homestead provision sets forth the restrictions a homestead owner faces when attempting to alienate or devise the homestead property. Id. at 1001-02.
Furthermore, "a one-half interest, the right of possession, or any beneficial interest in land" gives the claimant a right to exempt it as his homestead. Bessemer Props., Inc. v. Gamble, 158 Fla. 38, 27 So.2d 832, 833 (1946). It is not essential that the claimant hold the legal title to the land. Id. It is only necessary that the homestead status attaches prior to the attachment of the creditors' lien. Id. In Gamble, the husband purchased approximately six acres of land and had the deed executed in favor of his wife. Id. at 832. The husband subsequently constructed a home on the property and made other expenditures in the way of upkeep, insurance, and taxes. Id. A creditor filed a bill of complaint alleging that said property be levied upon and sold to pay a certain judgment secured by it against the husband. Id. Gamble and his wife filed separate answers, in which the wife claimed the property as her separate property, while the husband claimed the home as his homestead, entitled to exemption from plaintiff's judgment under the Constitution. Id. The supreme court affirmed the trial court's holding that the husband's contributions to his wife's separate property created an interest in which he was entitled to claim a homestead exemption. Id. at 833. The court reasoned, "There is no question that Gamble was the head of a family[1] and that his contributions to his wife's separate property gave him an equitable interest on the basis of which he could claim his homestead exemption." The court further explained, "If the homestead status attached prior to proceedings to subject the property to creditors' lien, regardless of where the title is lodged, it is exempt." Id.
Similarly, in Heiman v. Capital Bank, 438 So.2d 932, 933 (Fla. 3d DCA 1983), the court held that "record title is not a prerequisite to a finding that property is homestead. Homestead status may be derived from the husband's beneficial interest as head of the family in a marital home titled in his wife's name." The court concluded that the surviving spouse, who sought to have her condominium declared exempt from forced sale under the homestead provisions of the Florida Constitution, was entitled to demonstrate that her husband retained a beneficial interest in the condominium sufficient to have the property designated homestead even though her name appeared on the deed. Id; see also S. Walls, 810 So.2d at 569-70 (The constitution "does not designate how title to the property is to be held and it does not limit the estate that must be owned, i.e., fee simple, life estate, or some lesser interest . . . The individual claiming the homestead exemption need not hold fee simple title to the property."); Callava v. Feinberg, 864 So.2d 429, 431 (Fla. 3d DCA 2003)(concluding that wife was entitled to claim a homestead exemption to the forced sale of the property and the trial court erred in foreclosing her interest in the property, even though wife owned only a beneficial interest in the property and legal title to the home was not in wife's *878 name.); Engelke, 921 So.2d at 696 (concluding that constitutional homestead protection applied even though decedent had only a one-half interest in the residence and revocable trust held title to the property).
Furthermore, an award of possession of the marital residence to a wife does not extinguish the husband's homestead. See Cain v. Cain, 549 So.2d 1161, 1163 (Fla. 4th DCA 1989). Once homestead status is acquired, it continues until the homestead is abandoned or alienated in the manner provided by law. Id. To show abandonment, both the owner and his family must have abandoned the property. Id.
It is undisputed that Marie Coy held title to the property which Appellant is claiming to be his homestead. However, according to the cases discussed above, this would not defeat Appellant's homestead interest. It is also undisputed that the home was purchased during the parties' marriage in 1979 and remained the marital home until they separated in 2003. Although Appellant left the home in 2003 pursuant to an injunction that awarded Marie Coy temporary exclusive use and possession of the marital home, an award of possession of the marital residence to a wife does not extinguish the husband's homestead. See Cain, 549 So.2d at 1163. Furthermore, there is no evidence that Appellant "abandoned" the homestead. Based on these facts, we agree that Appellant was entitled to a full evidentiary hearing and determination as to whether he had a constitutionally protected homestead right in the marital home before the trial court could proceed with foreclosure. However, the foreclosure court refused to make that determination, left the homestead issue for the family court, and ordered disbursement of the sale proceeds to Mango Bay to pay off the mortgage. When the family court issued its final judgment after the foreclosure proceedings had terminated, the family court also failed to make a finding with respect to the homestead issue.
We conclude that the foreclosure court's refusal to decide the homestead issue is reversible error and therefore reverse the order denying Appellant's motion to prohibit sale/motion to freeze proceeds from sale, and remand the case to the foreclosure court to determine whether the Appellant has a protected homestead interest in the property.
Reversed and Remanded.
GUNTHER, FARMER and MAY, JJ., concur.
NOTES
[1] Until 1985, the homestead exemption was limited to individuals who qualified as "head of family." See Art. X, § 4, Fla. Const. (1983). However, in 1984, an amendment to this section of the constitution was approved which changed the term "head of family" to "a natural person," thereby expanding the class of persons who can take advantage of the homestead provision and its protections. See Pub. Health Trust of Dade County v. Lopez, 531 So.2d 946 (Fla.1988).