DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT
*July Term 2014*

**DR. ROSS G. STONE,**
Appellant,

v.

**NANCY STONE** and **ALMA STONE,**
Appellees.

No. 4D11-4541

[November 12, 2014]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Diana Lewis, Judge; L.T. Case No. 502007CP002812 XXXXMB.

William T. Viergever of Sonneborn Rutter Cooney & Smith, P.A., West Palm Beach, for appellant.

Edward Downey of Downey & Downey, P.A., Palm Beach Gardens, for appellee Nancy Stone.

ROBINSON, MICHAEL A., Associate Judge.

Ross Stone appeals a final summary judgment in favor of Nancy Stone in a dispute involving the distribution of homestead property as part of the estate of their father Jerome Stone. The trial court held the transfer of the property to Nancy following Jerome's death was not an impermissible devise of homestead property. We find the trial court erred in part, but nevertheless affirm the result.

**Facts**

The property in dispute was initially titled in the name of Jerome Stone and his wife, Alma Stone, by warranty deed dated May 3, 1991. On March 27, 2000, Jerome and Alma executed a warranty deed conveying the property to themselves as tenants in common, each as to an undivided one-half interest. On the same day, Jerome executed the Jerome M. Stone Qualified Personal Residence Trust Agreement (hereinafter referred to as "QPRT") and then executed a warranty deed conveying his one-half

tenancy in common interest in the property to himself and Alma as co-trustees of the QPRT. Nancy was the sole beneficiary of the QPRT. The term of the QPRT was the earlier of five years from its creation or Jerome's death. The trust agreement provided that if Jerome died before the end of the five-year term, the remaining balance of the trust would "revert and be distributed to the legal representative of Grantor's Estate, to be disposed of as part of the Grantor's Estate." Alma similarly executed her own QPRT and conveyed her one-half tenancy in common interest in the property to her QPRT. (Alma's one-half interest is not at issue in this appeal.).

Jerome died on February 10, 2005, survived by Alma and their two adult children, Ross and Nancy. Because Jerome failed to live the five years of the QPRT term, his one-half interest in the homestead property reverted to his estate. Pursuant to Jerome's will dated December 22, 2000, his probate assets poured over to a revocable living trust. Upon Jerome's death, the pour-over trust became irrevocable and the trust assets were then held in further trust for the benefit of Alma for her life. Upon her death, the trust was to terminate and be distributed, in default of Alma's exercise of a power of appointment, outright to Nancy. Both Jerome's will and the revocable trust agreement expressly make no provision for Ross. Alma died on June 18, 2009, survived by Ross and Nancy. Jerome's one-half interest in the homestead property then passed to Nancy pursuant to the terms of his will.

In Jerome's estate administration proceedings, Nancy filed a Petition for Instructions, Determination of Status of Assets, and Other Relief, seeking a declaration that the disposition of Jerome's interest in the residence was not in violation of the devise restrictions on homestead property. Ross filed a Response and Counter-Petition for Determination of Homestead Status. The parties subsequently filed cross motions for summary judgment.

On November 18, 2011, the trial court entered a final summary judgment in favor of Nancy. The trial court found that the QPRT was an irrevocable trust, meeting the requirements of section 732.4017, Florida Statutes (2010). The trial court ruled that the QPRT owned the property at the time of Jerome's death and, therefore, the transfer of the property to Nancy was not a devise for the purpose of the homestead devise restrictions. Alternatively, the trial court found that Alma waived her homestead rights by executing the March 27, 2000 warranty deeds splitting the property into two one-half tenancy in common interests and transferring those separate interests to the two QPRTs. The trial court thus ruled that, even if the transfer of Jerome's interest in the property to Nancy following Jerome's death was a devise, the disposition did not

2

violate the homestead devise restrictions. This timely appeal of the summary judgment order follows.

We review orders granting summary judgment *de novo*. *See Volusia Cnty. v. Aberdeen at Ormond Beach, L.P.*, 760 So. 2d 126, 130 (Fla. 2000); *Philips Lake Worth, L.P. v. BankAtlantic*, 85 So. 3d 1221, 1224–25 (Fla. 4th DCA 2012). Summary judgment is proper if there is no genuine issue of material fact and if the moving party is entitled to judgment as a matter of law. *See, e.g.*, *Volusia Cnty.*, 760 So. 2d at 130. The question before us is whether the trial court erred in finding that Nancy was entitled to judgment as a matter of law because the transfer of Jerome's interest in the property to her after Jerome's death was not an impermissible devise of homestead property. We find the trial court erred in part, but nevertheless affirm because Nancy is entitled to judgment as a matter of law.

## Homestead Devise Restrictions

The meaning of homestead has different meanings depending on the context in which it is used: (1) exemption from ad valorem taxation, (2) protection from forced sale by creditors, and (3) limitations on alienation and devise. *Engelke v. Estate of Engelke*, 921 So. 2d 693, 695–96 (Fla. 4th DCA 2006) (citing *Snyder v. Davis*, 699 So. 2d 999 (Fla. 1997)).

Florida law restricts the devise of homestead property. "Devise" is defined as "a testamentary disposition of real or personal property." § 731.201(10), Fla. Stat. (2011).[1] Article X, section 4 of the Florida Constitution provides:

> § 4. Homestead; exemptions
> (a) There shall be exempt from forced sale under process of any court, and no judgment, decree or execution shall be a lien thereon, except for the payment of taxes and assessments thereon, obligations contracted for the purchase, improvement or repair thereof, or obligations contracted for house, field or other labor performed on the realty, the following property owned by a natural person:
>> (1) a homestead, if located outside a municipality, to the extent of one hundred sixty acres of contiguous land and improvements thereon, which shall not be reduced without the owner's consent by reason of subsequent

---

[1] The language in the current versions of the relevant statute sections cited in this opinion have not been amended.

inclusion in a municipality; or if located within a municipality, to the extent of one-half acre of contiguous land, upon which the exemption shall be limited to the residence of the owner or the owner's family;

(2) personal property to the value of one thousand dollars.

(b) These exemptions shall inure to the surviving spouse or heirs of the owner.

(c) The homestead shall not be subject to devise if the owner is survived by spouse or minor child, except the homestead may be devised to the owner's spouse if there be no minor child. The owner of homestead real estate, joined by the spouse if married, may alienate the homestead by mortgage, sale or gift and, if married, may by deed transfer the title to an estate by the entirety with the spouse. If the owner or spouse is incompetent, the method of alienation or encumbrance shall be as provided by law.

Sections 4(a) and 4(b) protect Floridians from general creditors. Section 4(c) protects the surviving spouse and minor children from having the homestead property transferred out from under them by the other spouse (or other parent) without the consent of both spouses.

The corresponding statutory provision is section 732.4015, Florida Statutes, entitled "Devise of homestead." It states:

(1) As provided by the Florida Constitution, the homestead shall not be subject to devise if the owner is survived by a spouse or a minor child or minor children, except that the homestead may be devised to the owner's spouse if there is no minor child or minor children.

(2) For the purposes of subsection (1), the term:

(a) "Owner" includes the grantor of a trust described in s. 733.707(3) that is evidenced by a written instrument which is in existence at the time of the grantor's death as if the interest held in trust was owned by the grantor.

(b) "Devise" includes a disposition by trust of that portion of the trust estate which, if titled in the name of the grantor of the trust, would be the grantor's homestead.

(3) If an interest in homestead has been devised to the surviving spouse as authorized by law and the constitution, and the surviving spouse's interest is disclaimed, the

4

disclaimed interest shall pass in accordance with chapter 739.

§ 732.4015, Fla. Stat. (2011). This law recognizes the revocable trust as a will substitute and the grantor of such a trust as the equivalent of the testator of a will for purposes of the application of homestead laws. The law does not change the restrictions on the devise of homestead property. *See Engelke*, 921 So. 2d at 697.

### *Inter Vivos* Transfer of Homestead Property

Notwithstanding the homestead devise restrictions, property owners may give away or dispose of homestead property during their lifetimes, including by transfer to a trust. Section 732.4017, Florida Statutes, provides:

> (1) If the owner of homestead property transfers an interest in that property, including a transfer in trust, with or without consideration, to one or more persons during the owner's lifetime, the transfer is not a devise for purposes of s. 731.201(10) or s. 732.4015, and the interest transferred does not descend as provided in s. 732.401 if the transferor fails to retain a power, held in any capacity, acting alone or in conjunction with any other person, to revoke or revest that interest in the transferor.
>
> (2) As used in this section, the term "transfer in trust" refers to a trust under which the transferor of the homestead property, alone or in conjunction with another person, does not possess a right of revocation as that term is defined in s. 733.707(3)(e). A power possessed by the transferor which is exercisable during the transferor's lifetime to alter the beneficial use and enjoyment of the interest within a class of beneficiaries identified only in the trust instrument is not a right of revocation if the power may not be exercised in favor of the transferor, the transferor's creditors, the transferor's estate, or the creditors of the transferor's estate or exercised to discharge the transferor's legal obligations. This subsection does not create an inference that a power not described in this subsection is a power to revoke or revest an interest in the transferor.
>
> (3) The transfer of an interest in homestead property described in subsection (1) may not be treated as a devise of that interest even if:
>
> > (a) The transferor retains a separate legal or equitable interest in the homestead property, directly or indirectly

through a trust or other arrangement such as a term of years, life estate, reversion, possibility of reverter, or fractional fee interest;

(b) The interest transferred does not become a possessory interest until a date certain or upon a specified event, the occurrence or nonoccurrence of which does not constitute a power held by the transferor to revoke or revest the interest in the transferor, including, without limitation, the death of the transferor; or

(c) The interest transferred is subject to divestment, expiration, or lapse upon a date certain or upon a specified event, the occurrence or nonoccurrence of which does not constitute a power held by the transferor to revoke or revest the interest in the transferor, including, without limitation, survival of the transferor.

(4) It is the intent of the Legislature that this section clarify existing law.

§ 732.4017, Fla. Stat. (2011).[2] This law clarifies that an *inter vivos* transfer of homestead property to other persons, including through a trust, is not a devise for homestead purposes, provided the transferor does not retain the power to revoke the transfer or revest title to the property in himself.

## The Qualified Personal Residence Trust

A QPRT is an estate planning device whereby the settlor creates an irrevocable trust funded by the transfer of a personal residence, while retaining a right to reside on the property for a term of years. *See Nolte v. White*, 784 So. 2d 493, 494 n.1 (Fla. 4th DCA 2001) (citing Jeffrey A. Baskies, *Understanding Estate Planning with Qualified Personal Residence Trusts*, 73 Fla. B.J. 72 (1999)). At the end of the term stated in the trust instrument, the settlor no longer has the right to live in the residence; he must either vacate the property or pay rent to the trust. *See* Baskies, *supra*, at 72. The trust instrument may allow the settlor the power to sell the residence and reinvest the proceeds in a new residence, but the QPRT may not sell or transfer the residence back to the settlor. *Id.* at 72–73.

The use of a QPRT allows a homeowner to transfer property to his children while gaining significant estate, gift, and income tax advantages. *See Robbins v. Welbaum*, 664 So. 2d 1, 1 (Fla. 3d DCA 1995) (citing I.R.C. § 2702; Peter A. Borrok, *Four Estate Planning Devices to Get Excited About,*

---

[2] This statute was enacted in 2010 and its language has remained unchanged.

N.Y.St.B.J., Jan. 1995, at 32; David C. Humphreys, Jr., *Qualified Personal Residence Trusts: "Have Your Grits and Eat Them, Too!,"* S.C. Law., Nov.-Dec. 1994, at 45); *see also* Baskies, *supra.* However, if the settlor dies before the term of the trust expires, he will fail to receive the transfer tax savings and the full market value of the residence will be included in his estate at the time of his death. *See* Baskies, *supra*, at 75; Borrok, *supra*, at 36; Humphreys, *supra*, at 45. The settlor thus gains the tax advantages of a QPRT only by surviving the term of the trust.

QPRTs are permitted under Florida law by section 732.4017, Florida Statutes, and under the federal tax code by Internal Revenue Code section 2702(a)(3)(A)(ii) and Treasury Regulation section 25.2702-5(c). *See* Borrok, *supra*, at 35–36.

The Jerome M. Stone Qualified Personal Residence Trust, dated March 27, 2000, set forth in Article VII Jerome's intent to create a QPRT within the meaning of Internal Revenue Code section 2702(a)(3)(A)(ii) and Treasury Regulation section 25.2702-5(c), and provided that the provisions of the agreement should be interpreted to carry out that intent. Article VIII declared that the QPRT was irrevocable. Pursuant to Article I of the agreement, the term of the QPRT was the earlier of five years from its creation or Jerome's death, and during the term of the QPRT Jerome "shall be entitled to the exclusive use, possession and enjoyment of the personal residence held by Trustee." In Article XI(K), Jerome retained the power to substitute other property of an equivalent value as the trust principal, but Article XX explicitly prohibits the Trustee of the QPRT from selling or transferring the property back to Jerome. Pursuant to Article V(B), if Jerome died before five years from the creation of the trust (*i.e.* before March 27, 2005), the remaining balance of the trust "shall revert and be distributed to the legal representative(s) of Grantor's estate, to be disposed of as part of Grantor's estate."

## Analysis

The issue before the trial court was whether the transfer of Jerome's interest in the property to Nancy after Jerome's death was an impermissible devise of homestead property. The court found that Jerome's QPRT satisfied the requirements of section 732.4017, and, therefore, the QPRT was the owner of the property at the time of Jerome's death and the transfer of the property to Nancy was not a devise for the purpose of the homestead devise restrictions. On appeal, Ross argues that (1) given the control retained by Jerome, the trial court erred in applying section 732.4017; (2) the trial court erred in retroactively applying section 732.4017, which was enacted in 2010, to the QPRT created in 2000; and

(3) because the property passed *to Nancy by devise* under Jerome's will, the constitutional and statutory limitations on the devise of homestead property necessarily apply. Ross asserts that Jerome attempted to devise the property to Nancy in a manner contrary to Florida law, and, therefore, the attempted devise should fail and the homestead property should descend as if Jerome had died intestate, pursuant to section 732.401, Florida Statutes (2011). If section 732.401 were applied, upon Jerome's death, Alma would take a life estate with a vested remainder to Ross and Nancy equally. *See* § 732.401(1), Fla. Stat.

We find the trial court improperly conflated what should be treated as two distinct transfers: (1) the initial transfer of Jerome's interest in the property to the QPRT; and (2) the subsequent transfer of Jerome's interest in the property to Nancy after Jerome's death, pursuant to his will. For the reasons set forth below, we hold the trial court correctly found that the transfer of Jerome's interest in the property to the QPRT was not a devise, but erred in extending that finding to the transfer of Jerome's interest in the property to Nancy after Jerome's death. The latter transfer should have been treated as a devise, subject to the homestead devise restrictions.

The trial court properly applied section 732.4017 to the initial transfer of Jerome's interest in the property to the QPRT. Section 732.4017(1) provides that an *inter vivos* transfer of homestead property to a trust will not be treated as a devise, provided the settlor did not retain a power to revest the property in himself. *See* § 732.4017(1), Fla. Stat. The trial court correctly found that Jerome did not retain the power to revoke or amend the QPRT or to revest the property in himself. Article XX of the trust agreement prohibits the trustee from selling or transferring the property back to Jerome. Section 732.4017(3)(a) expressly allows the settlor to retain an interest in the property in the form of a possibility of reverter. *See* § 732.4017(3)(a), Fla. Stat. The fact that Jerome retained such an interest does not place Jerome's transfer of the homestead property outside the parameters of section 732.4017.

Ross' argument that section 732.4017 should not have been applied retroactively is wholly without merit. The statute expressly states that it was intended to clarify existing law. *See* § 732.4017(4), Fla. Stat. (2010); *see also Fla. Ins. Guar. Ass'n v. Devon Neighborhood Ass'n*, 67 So. 3d 187, 195 (Fla. 2011) (explaining that a statute is presumed not to have retroactive application, but the presumption is rebuttable by clear evidence that the legislature intended that the statute be applied retroactively); *D & T Props., Inc. v. Marina Grande Assocs., Ltd.*, 985 So. 2d 43, 47–48 (Fla. 4th DCA 2008) (finding that an express legislative statement that a statute is intended "to clarify existing law" should be

taken as strong evidence of legislative intent that the statute should apply retroactively). Therefore, we find the trial court properly applied section 732.4017 to the transfer of Jerome's interest in the property to the QPRT and correctly held that this initial transfer was not a devise subject to the homestead devise restrictions.

However, we find the trial court erred in extending the application of section 732.4017 to the subsequent transfer of Jerome's interest in the property to Nancy after Jerome's death. Nancy argues simply that the property was disposed of pursuant to section 732.4017 and, therefore, the entire transfer was not a devise for the purpose of the homestead devise restrictions. We would agree, if Jerome had survived the term of the QPRT and the property had passed to Nancy through the trust. *See Zuckerman v. Alter*, 615 So. 2d 661, 663–64 (Fla. 1993) ("If by the terms of the trust an interest passes to the beneficiary during the life of the settlor, although that interest does not take effect in enjoyment or possession before the death of the settlor, the trust is not testamentary."). Ross concedes this point.

But, because Jerome failed to outlive the term of the QPRT, the transfer of the property was not completed pursuant to the terms of the trust as permitted by section 732.4017. *See generally* Baskies, *supra*. Jerome never gave his interest in the property completely to the trust. Although he did not have the power to revest title to the property in himself, he did have the power, until the end of the five-year term of the QPRT (or until the time of his death, as it happened), to control the disposition of the property by changing the terms of his will or the pour-over revocable trust. He could have amended his will or pour-over trust at any time before his death and designated someone other than Nancy to receive his interest in the property. The QPRT did not control the disposition of the property at the time of Jerome's death. If Jerome had survived the stated term of the QPRT, the transfer would have been completed and the property would have passed to Nancy through the trust pursuant to its terms. However, since Jerome died before the term of the QPRT, it is as if the QPRT never existed, at least for this purpose. Under the terms of the trust agreement, the property reverted back to Jerome's estate, and then passed to Nancy through the terms of his will. This is a devise—a testamentary disposition—on its face. To restrict the analysis to the initial transfer of Jerome's interest in the property to the QPRT would ignore the plain fact that, in this case, the property ultimately reverted back to the estate and passed to Nancy through the terms of Jerome's will, and would allow an improper circumvention of the homestead devise restrictions.

Although section 732.4017(3)(a) allows the settlor of a QPRT to retain a

possibility of reverter, the statute does not speak to whether subsequent transfers of the property following such a reversion, pursuant to the terms of the settlor's will, should be treated as a devise.  The statute provides only that the initial transfer of the property into the QPRT is not a devise.  We have to assume the Legislature did not intend to remove any subsequent transfers from the broad definition of "devise" or from the purview of the homestead devise restrictions.  *See State v. Burris*, 875 So. 2d 408, 410 (Fla. 2004) (stating that when a statute is clear, a court may not look behind the statute's plain language); *see also Snyder v. Davis*, 699 So. 2d 999, 1002 (Fla. 1997) ("[T]he homestead provision is to be liberally construed in favor of maintaining the homestead property."); *Public Health Trust v. Lopez*, 531 So. 2d 946, 948 (Fla. 1988) ("[T]he purpose of the homestead exemption is to promote the stability and welfare of the state by securing to the householder a home, so that the homeowner and his or her heirs may live beyond the reach of financial misfortune and the demands of creditors.").

Therefore, we find the trial court erred in applying section 732.4017 to find that the transfer of Jerome's interest in the property to Nancy after Jerome's death, pursuant to the terms of Jerome's will, was not a devise.  We hold that when a homeowner transfers property to a QPRT pursuant to section 732.4017 and the property later reverts back to the homeowner's estate because the homeowner fails to survive the term of the QPRT, a subsequent disposition of the property pursuant to the homeowner's will is a devise.  In this case, the transfer of Jerome's interest in the property to Nancy after Jerome's death was a devise, subject to the constitutional homestead devise restrictions.

**Waiver**

The trial court alternatively found that Alma waived her homestead rights for the purpose of the homestead devise restrictions and, therefore, the disposition of the residence was not in violation of the devise restrictions.  We agree.

Alma waived her homestead rights by executing the March 27, 2000 warranty deed splitting the property into two one-half tenancy in common interests and then transferring her interest into her QPRT.  Section 732.702, Florida Statutes, provides in part, that "[t]he rights of a surviving spouse to . . . homestead . . . may be waived, wholly or partly, before or after marriage, by a written contract, agreement, or waiver, signed by the waiving party in the presence of two subscribing witnesses."  § 732.702(1), Fla. Stat. (2011).  Further, "[u]nless the waiver provides to the contrary, a waiver of 'all rights,' or equivalent language" may constitute a waiver of all

10

homestead rights that would otherwise pass to the waiving spouse by intestate succession. *Id.* The deed Alma executed on March 27, 2000, provided that she "grants, bargains, sells, aliens, remises, releases, conveys, and confirms" the property "together with all the tenements, hereditaments, and appurtenances thereto belonging or in anywise appertaining." We agree with the trial court that this constituted a waiver of any constitutional homestead rights Alma had in Jerome's one-half interest in the property.

Ross suggests that Alma did not intend to waive her constitutional homestead rights in 2000 because she continued to claim a homestead exemption from ad valorem taxation.[3] However, Florida law defines "homestead" in different ways depending on the context, so property that is considered homestead for the purpose of exemption from ad valorem taxation is not necessarily considered homestead for the purpose of devise restrictions. *See, e.g., Snyder v. Davis*, 699 So. 2d 999 (Fla. 1997); *In re Wartels' Estate*, 357 So. 2d 708 (Fla. 1978); *Willens v. Garcia*, 53 So. 3d 1113 (Fla. 3d DCA 2011). In fact, we have held specifically that individuals conveying their residence to a QPRT may still be entitled to the homestead tax exemption. *Nolte v. White*, 784 So. 2d 493, 494 (Fla. 4th DCA 2001) (citing *Robbins v. Welbaum*, 664 So. 2d 1 (Fla. 3d DCA 1995)); *see* Baskies, *supra*, at 74. Therefore, the fact that Alma continued to claim a homestead exemption from ad valorem taxation does not affect our finding that she waived her homestead rights in Jerome's one-half interest in the property for the purpose of the constitutional homestead devise restrictions.

When there are no surviving minor children and the surviving spouse has waived her homestead rights, there is no constitutional restriction on the devise of the homestead. *City Nat'l Bank of Fla. v. Tescher*, 578 So. 2d 701, 703 (Fla. 1991); *see also Hartwell v. Blasingame*, 584 So. 2d 6 (Fla. 1991) (finding that an adult child was not entitled to seek the protection of the constitutional homestead devise restrictions where the surviving spouse had validly waived her homestead rights because the child was bound by the spouse's waiver); *Engelke v. Estate of Engelke*, 921 So. 2d 693 (Fla. 4th DCA 2006) (holding that a spouse's waiver is the legal equivalent of predeceasing the decedent, so that the decedent may devise the homestead property free of the constitutional restrictions). In this

---

[3] On October 18, 2000, Jerome and Alma executed a Certificate of Trust for the Palm Beach County Property Appraiser's Office certifying their entitlement to the use and occupancy of the property held in their respective QPRTs and their having a sufficient interest in the property to claim the homestead exemption from ad valorem taxation. Property records show they received a homestead tax exemption from 1994 until Jerome and Alma's deaths.

case, there were no surviving minor children and Alma waived her homestead rights. Ross, as an adult child, is not entitled to seek the protection of the homestead devise restrictions. Jerome thus was free to devise his interest in the homestead property, without any constitutional restriction, and the transfer to Nancy after Jerome's death was valid under Florida law.

## Conclusion

In conclusion, we find the trial court erred in ruling that the transfer of Jerome's interest in the property to Nancy after Jerome's death was not a devise. We hold that when a homeowner transfers property to a QPRT pursuant to section 732.4017, Florida Statutes, and the property later reverts back to the homeowner's estate because the homeowner fails to survive the term of the QPRT, a subsequent disposition of the property pursuant to the homeowner's will is a devise, subject to the constitutional homestead devise restrictions. However, we affirm the trial court's finding in this case that Alma waived her spousal homestead rights and, therefore, the devise of the residence was not in violation of the homestead devise restrictions. Nancy is thus entitled to judgment as a matter of law. The trial court's summary judgment in her favor is, accordingly, affirmed.

*Affirmed.*

TAYLOR and CIKLIN, JJ., concur.

\* \* \*

***Not final until disposition of timely filed motion for rehearing.***

12