# Third District Court of Appeal

## State of Florida

Opinion filed March 12, 2025.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D24-1405
Lower Tribunal No. 23-21239-CA-01
_____


**James E. Rogers,**
Appellant,

vs.

**Guardianship Program of Dade County, Inc.,**
Appellee.


An Appeal from the Circuit Court for Miami-Dade County, David C. Miller, Judge.

Murphy and O'Brien, Ltd., and William F. Murphy, for appellant.

Judith A. Frankel, for appellee.


Before LOGUE, C.J., and GORDO and BOKOR, JJ.

LOGUE, C.J.

James E. Rogers appeals the trial court's final judgment in favor of the

Guardianship Program of Dade County, Inc. in the Guardianship Program's

action to quiet title and for declaratory relief. Because the trial court properly concluded Rogers' quit claim deed was void as it failed to contain sufficient language waiving homestead rights, and Rogers' counterclaims failed to state a cause of action, we affirm.

## Background

The Guardianship Program, as the plenary guardian of Sharyn Larsson, filed the underlying action against Rogers to quiet title and for declaratory relief. The Guardianship Program alleged Sharyn and her husband, Stephen, owned a property located in Miami Gardens, Florida, as tenants by the entireties. Rogers claimed an ownership interest in the property based on a quit-claim deed dated December 2, 2021. The quit-claim deed purported to transfer title of the property from Sharyn and Stephen as tenants by the entireties to Stephen for his life with a remainder interest to Rogers. The quit-claim deed was executed by Stephen on Sharyn's behalf through a power of attorney she allegedly granted him. Stephen passed away on January 17, 2022.

The Guardianship Program sought to quiet title in Sharyn and for a declaration that the quit-claim deed was void because it failed to contain language indicating the intent to waive homestead rights as required by section 732.7025, Florida Statutes. The Guardianship Program argued that

2

because the quit-claim deed was void ab initio, the property passed to Sharyn as Stephen's surviving spouse by operation of law based on their ownership of the property as tenants by the entireties.

Rogers filed an Answer, Affirmative Defenses and Counterclaim. He alleged six affirmative defenses: (1) forum shopping; (2) accord and satisfaction; (3) unclean hands; (4) fraud upon the court; (5) negligence/offset; and (6) failure to mitigate. Rogers also alleged counterclaims for forcible entry and unlawful detainer, fraud, and conversion.

Rogers alleged he had resided at the property since November 2021 based on a "structured agreement" with Stephen to assist him in raising funds for his personal use, the cost of Sharyn's care, and repairs to the property. He contended he was the lawful owner of the property based on the quit-claim deed. Rogers further alleged that after Stephen's death, the Guardianship Program "broke into the property" and changed the locks, excluding him from the property. Rogers also alleged the Guardianship Program withheld Stephen's Last Will and Testament, which named Rogers as personal representative and the only beneficiary of the Estate of Stephen Larsson. He further alleged the Guardianship Program took possession of all the contents of the property and sold some items. Finally, Rogers alleged

he paid for the entire balance of the property's mortgage to save it from foreclosure after the Guardianship Program failed to pay the mortgage.

The Guardianship Program moved for partial summary judgment and argued it was entitled to judgment as a matter of law on the issue of Rogers' ownership interest because the quit-claim deed he was claiming under was void ab initio based on its failure to comply with section 732.7025. The Guardianship Program argued the quit-claim deed failed to contain the requisite language expressing the intent to waive homestead rights and, therefore, the property passed to Sharyn as Stephen's surviving spouse by operation of law.

Rogers responded and argued in opposition that he "paid consideration of $100,000 and a promissory note in the amount of $50,000," totaling $150,000, for the remainder interest in the property granted by the quit-claim deed. Rogers further alleged he paid to save the property from foreclosure. Finally, Rogers alleged that, "in the event [of] an unfavorable ruling[,]" he was entitled to the return of the "$230,000" he expended on the property since he was being divested of "the benefit of the bargain, that was totally structured by Stephen Larsson for his benefit and that of Sharyn, his wife."

4

The trial court held a hearing on the Guardianship Program's partial summary judgment motion and thereafter issued a written order granting the motion. The trial court concluded as a matter of law that the quit-claim deed failed to transfer title because it failed to contain the statutory required language regarding waiver of homestead rights. Rogers filed a Motion for Rehearing as to Partial Summary Judgment Entered by the Court, which raised a bona fide purchaser defense for the first time. The motion was denied by the trial court.

Rogers subsequently moved for summary judgment on his affirmative defenses and counterclaims. In his motion, he once again raised the bona fide purchaser defense, seemingly trying to tie it into his previously pled accord and satisfaction affirmative defense. He also filed an affidavit from the attorney who prepared the quit-claim deed attesting that Rogers paid consideration for his remainder interest in the form of a check for $100,000 and a promissory note for $50,000.

The Guardianship Program, meanwhile, first moved to dismiss Rogers' counterclaims, arguing there was no basis for the counterclaims now that the trial court had ruled the quit-claim deed was void ab initio and title to the property was held by Sharyn Larsson. Regarding Rogers' counterclaim for asset conversion, the Guardianship Program argued there was no evidence

5

demonstrating that any assets contained in the property were not jointly owned by Sharyn and Stephen Larsson. The Guardianship Program also noted that the curator for the Estate of Stephen Larsson inspected items secured by the Guardianship Program and filed an inventory in the Estate administration that was served on Rogers, and which he did not file any objection to. The Guardianship Program later filed a motion for summary judgment requesting dismissal of Rogers' pending counterclaims. It argued Rogers' counterclaims were based on Rogers having a possessory interest in the property and, since the trial court had already determined this was not the case, the counterclaims failed as a matter of law.

After a hearing on the parties' pending motions, the trial court issued its final judgment. The trial court ruled it would treat the Guardianship Program's motion to dismiss Rogers' counterclaims as a motion for judgment on the pleadings pursuant to Florida Rule of Civil Procedure 1.140(h)(2), and it granted the motion for failure to state a cause of action. Based on this ruling, the trial court deemed Rogers' request for summary judgment moot.

Rogers filed a motion for clarification and amendment of judgment, requesting that the final judgment be amended to include the trial court's specific oral ruling during the hearing that Rogers' counterclaims were dismissed without prejudice so that the claims might be brought in pending

6

probate court proceedings. The trial court denied the motion. This appeal timely followed.

## Legal Analysis

Rogers raises several issues on appeal. His primary argument is that the trial court erred in determining that the quit-claim did not contain sufficient language to waive homestead rights. Rogers alternatively contends that, even if the deed did not contain the necessary language, he was nevertheless entitled to the bona fide purchaser defense. Rogers also argues the trial court erred in granting judgment on the pleadings and dismissing his counterclaims. Alternatively, he contends the dismissal should have specified it was without prejudice.

I.    Whether the Quit-Claim Deed Contained Sufficient Language to Waive Homestead Rights

The trial court properly concluded the quit-claim deed did not contain sufficient language to waive homestead rights. Article X, Section 4(c) of the Florida Constitution provides, in pertinent part:

> The homestead shall not be subject to devise if the owner is survived by spouse or minor child, except the homestead may be devised to the owner's spouse if there be no minor child. The owner of homestead real estate, joined by the spouse if married, may alienate the homestead by mortgage, sale or gift and, if married, may by deed transfer the title to an estate by the entirety with the spouse.

7

See also § 732.401(1), Fla. Stat. (2022) ("If not devised as authorized by law and the constitution, the homestead shall descend in the same manner as other intestate property; but if the decedent is survived by a spouse and one or more descendants, the surviving spouse shall take a life estate in the homestead, with a vested remainder to the descendants in being at the time of the decedent's death per stirpes.").

This provision is designed to protect surviving spouses and is to be liberally construed for their benefit. Feldman v. Schocket, 366 So. 3d 1104, 1108 (Fla. 3d DCA 2022). Equitable principles cannot operate to nullify a homestead interest, but such an interest may be waived. Id. In this regard, section 732.7025(1), Florida Statutes (2021), provides:

> A spouse waives his or her rights as a surviving spouse with respect to the devise restrictions under s. 4(c), Art. X of the State Constitution if the following or substantially similar language is included in a deed:
>
> "By executing or joining this deed, I intend to waive homestead rights that would otherwise prevent my spouse from devising the homestead property described in this deed to someone other than me."

It is undisputed that such language, or even substantially similar language, was not included in the quit-claim deed here.

Rogers attempts to discount section 732.7025 by arguing that "[t]he statute does not provide that the deed must include this specific language to

8

constitute a waiver." Rogers asserts the statute is merely intended to provide guidance and "is illustrative of the point that language waiving a constitutional right must be able to be clearly understood as waiving the right." See Thayer v. Hawthorn, 363 So. 3d 170, 174 (Fla. 4th DCA 2023).

Instead, Rogers seeks to rely on section 732.702(1), Florida Statutes, which authorizes a spouse to waive homestead rights "before or after marriage, by a written contract, agreement, or waiver, signed by the waiving party in the presence of two subscribing witnesses." The statute further provides that in such circumstances, "[u]nless the waiver provides to the contrary, a waiver of 'all rights,' or equivalent language," may constitute a waiver of all homestead rights that would otherwise inure to the benefit of the waiving spouse. Id.; see also Feldman, 366 So. 3d at 1109. If the waiver is executed after marriage, each spouse is additionally required to make a fair disclosure to the other of his or her estate. § 732.702(2), Fla. Stat.; see also Feldman, 366 So. 3d at 1109.

Rogers relies on the Fourth District's decision in Stone v. Stone, 157 So. 3d 295 (Fla. 4th DCA 2014), which found that the language contained in a warranty deed constituted a waiver of homestead rights, applying section 732.702(1). In Stone, the warranty deed provided that the grantor "'grants, bargains, sells, aliens, remises, releases, conveys, and confirms' the

9

property 'together with all the tenements, hereditaments, and appurtenances thereto belonging or in anywise appertaining.'" Stone, 157 So. 3d at 304. Without citation or significant analysis, the Fourth District concluded that this language was sufficient to waive homestead rights under the statute. Id.

Here, the quit-claim deed provided that Stephen Larsson and Sharyn Larsson, "as husband and wife as grantors [sic] . . . hereby remise, release and quit-claim . . . all the right, title, interest, claim and demand which the said Grantor[s] have[.]" This language is distinguishable from that found in Stone because the deed language in Stone included a specific reference to "hereditaments," which is "[a]ny property that can be inherited; anything that passes by intestacy." Thayer, 363 So. 3d at 173 (citing Hereditament, Black's Law Dictionary (11th ed. 2019)). "The language thus conveyed the spouse's inheritance interest in the property, and this would include her constitutional right to the inheritance of the homestead." Id. No similar reference is included in the quit-claim deed here, rendering the quit-claim deed "insufficient to constitute a written waiver of homestead rights as required by section 732.702(1)." Id.

Furthermore, as the Thayer court noted, "Stone generated concern as to what language in a deed would constitute a waiver of homestead rights." Id. at 173-74 (citing Jeffrey S. Goethe & Jeffrey A. Baskies, Homestead

10

Planning Under Florida's New "Safe Harbor" Statute, 93 Fla. B. J. 36 (May/June 2019)). These concerns resulted in the enactment of section 732.7025. See, e.g., Florida Staff Analysis, S.B. 512, 2/1/2018. Accordingly, the enactment of section 732.7025 calls into question whether the language deemed sufficient in Stone would be sufficient to waive homestead rights today.

We agree with the trial court's conclusion here that the quit-claim deed failed to include the necessary language expressly waiving homestead rights, rendering it void ab initio.

## II.    Bona Fide Purchaser Defense

Rogers contends, in the alternative, that if the deed did not contain sufficient language to waive homestead rights, he was nevertheless "entitled to the bona fide purchaser defense." The problem with this argument is that Rogers never raised this defense in his Answer, Affirmative Defenses, and Counterclaim. Instead, the record reflects that Rogers raised the bona fide purchaser defense for the first time in his motion for rehearing following the trial court's grant of partial summary judgment and its determination that the quit-claim deed was void. It does not appear from the record that Rogers ever sought to amend his pleadings to assert the defense.

Therefore, because Rogers failed to raise the bona fide purchaser defense in his responsive pleadings, we conclude he waived the defense. See, e.g., 951 Harbor Drive, LLC v. SD Constr., LLC, 394 So. 3d 690, 696 (Fla. 3d DCA 2024) ("[Florida] Rule [of Civil Procedure] 1.140(h) provides that a party waives all defenses and objections that the party fails to present in a responsive pleading . . . ."); cf. id. at 695 ("We begin with the rather unremarkable proposition that 'a summary final judgment cannot be based upon a defense raised in the summary judgment motion that had not been previously asserted in the answer.' On motion for summary judgment, the trial court may consider only matters raised in the pleadings." (internal citations omitted)).

III.    Whether the Counterclaims Stated a Cause of Action

The trial court properly concluded that Rogers' counterclaims failed to state a cause of action. Rogers alleged three counterclaims: (1) forcible entry and unlawful detainer; (2) fraud; and (3) asset conversion. Rogers recognizes on appeal that if we affirm as to the trial court's summary judgment determination that the quit-claim deed is void, then his claims of forcible entry and unlawful detainer and fraud necessarily fail.

Rogers nevertheless asserts that he at least stated a cause of action for asset conversion. Specifically, he argues that if the quit-claim deed is void

ab initio, he was entitled to "ownership of his nearly $250,000 dollars" that he paid to acquire the remainder interest in the property and to prevent the property from going into foreclosure. He contends the Guardianship Program "wrongfully converted the money" and, "[a]t the very least," he alleged "sufficient facts such that it was wrong for the trial court to grant judgment on the pleadings."

This argument is without merit for several reasons. To begin with, this is not the asset conversion counterclaim that was pled below. Rogers' asset conversion claim referred to the Guardianship Program (1) taking possession and selling off contents of the property, (2) acting as the owner of the property, and (3) failing to pay the property taxes, homeowner's insurance, and mortgage on the property. It also alleged Rogers paid the balance of the mortgage to prevent the property from being foreclosed on. However, it did not specifically refer to the money Rogers allegedly paid to purchase the remainder interest in the property. This is likely because this money was paid to Stephen Larsson.

Indeed, there has been no allegation made or evidence adduced that the money Rogers allegedly paid was ever in the "wrongful dominion and control" of the Guardianship Program or its ward, Sharyn Larsson. Batista v. Rodriguez, 388 So. 3d 1098, 1101 (Fla. 3d DCA 2024) ("Conversion is 'the

exercise of wrongful dominion and control over property to the detriment of the rights of its actual owner. Where a person having a right to possession of property makes demand for its return and the property is not relinquished, a conversion has occurred.'" (quoting World Cellphones Distribs. Corp. v. De Surinaamsche Bank, N.V., 357 So. 3d 225, 229 (Fla. 3d DCA 2023))). The evidence in the record indicates the money paid to acquire the remainder interest was paid to Stephen Larsson. Therefore, to the extent the money has not been spent, it presumably became a part of the Estate of Stephen Larsson following his passing. And the money allegedly paid to prevent foreclosure was most likely paid directly to the mortgagor, although there is no evidence of any of this other than Rogers' allegations.

Accordingly, based on the foregoing, the trial court properly concluded Rogers' counterclaims, including his claim of asset conversion, failed to state a cause of action.

IV.    Whether Dismissal Should Have Been Without Prejudice

As the trial court properly noted, any remaining claims Rogers may have regarding the money he allegedly paid likely belong in probate court as claims against the Estate of Stephen Larsson. The trial court's final judgment in this matter is as to the Guardianship Program and therefore the fact that it is with prejudice would not have any bearing on claims Rogers may have

14

against the Estate of Stephen Larsson. Based on the facts alleged and the record, amendment would be futile.

Affirmed.