845 So.2d 964 (2003)
Joshua N. BRATT, a minor, through his parents, natural guardians and next friends, Martin S. BRATT and Louise J. Bratt, and Martin S. Bratt and Louise J. Bratt, individually, Appellants,
v.
Suzanne LASKAS, M.D., Peter Averkiou, M.D., Jack J. Blanco, M.D., Jerry R. Wexler, M.D., Wexler, Blanco & Laskas, M.D., P.A., d/b/a Boca Raton Pediatric Associates, Lawrence M. Adams, M.D., Lawrence M. Adams, M.D., P.A., Peter G. Ballad, II, M.D., Peter G. Ballad, II, M.D., P.A., Jaime L. Baquero, M.D., Jamie L. Baquero, M.D., P.A., Boca Raton Community Hospital, Inc., Terry B. Cohen, M.D., Evan D. Goldstein, M.D., Jack F. Kareff, M.D., Joseph R. Purita, M.D., Quinn, Wollowick, Purita, Schosheim, Krebsbach & Stewart, Inc., Edward Kaplan, M.D., Jose M. Flores, M.D., Jose M. Flores, M.D., P.A., Stuart A. Friedman, M.D., Howard Martinez, M.D., Boca Infectious Disease Consultants, P.A., n/k/a Infectious Disease Associates, P.A., Virginia Rae, M.D., Virginia Rae, M.D., P.A., University of Miami, d/b/a University of Miami School of Medicine, Richard G. Curless, M.D., Rene Ruiz-Isasi, M.D. and Rene Ruiz-Isasi, M.D., P.A., Appellees.
No. 4D01-3386.
District Court of Appeal of Florida, Fourth District.
May 21, 2003.
*965 Edward T. Dinna of Law Office of Edward T. Dinna, Fort Lauderdale, for appellant.
Esther E. Galicia of George, Hartz, Lundeen, Fulmer, Johnstone, King & Stevens, Fort Lauderdale, for appellees Rene Ruiz-Isasi, M.D., and Rene Ruiz-Isasi, M.D., P.A.
WARNER, J.
Appellant, Joshua Bratt ("Bratt"), challenges the entry of final summary judgment in favor of appellee, Dr. Ruiz-Isasi ("Dr. Isasi"), in a medical malpractice action. He claims that the affidavits create genuine issues of material fact. We agree and reverse.
In the summer of 1993, Bratt attended summer camp in Massachusetts. After hiking in the wilderness, Bratt became extremely ill and developed a severe skin rash. When he returned to Florida, his parents took him to see his primary care physician, Dr. Laskas, who diagnosed the rash as scabies and prescribed a medicated shampoo. However, this resulted in transforming the rash into crusty sores similar to psoriasis. Bratt was then sent to two dermatologists for diagnoses.
While this was occurring, Bratt also developed gastrointestinal problems caused by an ascaris infection. Dr. Laskas prescribed medication, but when Bratt continued to have chronic abdominal pain, she sent him to Dr. Isasi, a pediatric gastroenterologist. His first visit with Dr. Isasi was approximately six weeks after returning from summer camp. Dr. Isasi performed several tests on Bratt and diagnosed him with an ascaris infection, as well as esophagitis, mild duodenitis, and reflux. He referred him to a dietician and prescribed medication. Dr. Isasi noticed Bratt's skin rash, and Mrs. Bratt informed the doctor of her son's history with the rash. Dr. Isasi did not think it was psoriasis and only confirmed that Bratt was seeing a dermatologist for the condition. In all, Dr. Isasi saw Bratt three times solely for his ascaris infection.
Over a year later, after Bratt had seen a dozen physicians and had developed various other symptoms, including severe headaches, he was seen in New York by Dr. Wolff, who diagnosed Bratt as suffering from Lyme's disease, an infection spread by a tick bite. Due to the late diagnosis, however, Bratt had already suffered permanent neurological damage.
Bratt and his parents filed a medical malpractice action against all of his treating physicians for failure to diagnose his medical condition as Lyme's disease. As to Dr. Isasi, Bratt alleged that gastrointestinal problems were common with Lyme's disease. As such, Dr. Isasi failed to comply with the professional standard of care by not considering Lyme's disease after being presented Bratt's history and symptoms, by not conducting appropriate examinations and tests to diagnose Lyme's disease, and by not treating or referring Bratt for treatment for Lyme's disease. *966 These departures, Bratt alleged, were the proximate cause of his injuries.
After answering the complaint and denying the material allegations, Dr. Isasi moved for summary judgment attaching an affidavit of Dr. Perman, a board certified pediatric gastroenterologist, who reviewed the medical records, the discovery, and depositions. Dr. Perman opined that Dr. Isasi's diagnosis, care and treatment of Bratt were within the standard of care for pediatric gastroenterologists in the medical community and was not the proximate cause of Bratt's injuries. In addition, Dr. Perman opined that Dr. Isasi, as a pediatric gastroenterologist did not have a duty to diagnose or treat Bratt's skin rash where other physicians were treating that condition.
Bratt responded to Dr. Isasi's motion by filing the affidavits of Louise Bratt, his mother, and Dr. May, a pediatrician. The mother's affidavit included a detailed account of Bratt's medical history since developing the skin rash in Massachusetts, including the various physicians that saw and treated Bratt and the symptoms he presented to each. Dr. May's affidavit explained Lyme's disease and its multi-organ effect. He further attested that Bratt's symptoms should have alerted each attending physician to the possibility of Lyme's disease as a differential diagnosis to be ruled out, particularly when 75% of Lyme's disease cases come from seven Northeastern states, including Massachusetts where Bratt had been camping. Dr. May also stated that because Lyme's disease can produce a variety of medical problems, involving a number of major organ systems, "every modern clinician needs to be familiar with Lyme disease... be they pediatricians [or] ... gastroenterologists."
At the hearing, Dr. Isasi's attorney noted that Dr. May's specialty was pediatric hematology and oncology; therefore, he did not qualify as an expert in the prevailing professional standard of care for a pediatric gastroenterologist. Moreover, he claimed that Dr. May's opinions, given in 1996 during the pre-suit process were "out-dated" as they did not consider other discovery. Bratt countered that, as the non-moving party, he did not have to produce any evidence until Dr. Isasi demonstrated from his affidavits the non-existence of material issues of fact. Bratt asserted Dr. Perman's affidavit lacked specificity and failed to conclusively establish that no genuine issues of material fact remained. The court disagreed and entered final summary judgment in favor of Dr. Isasi, from which Bratt appeals.
This court reviews de novo a trial court's decision on a motion for summary judgment. See Volusia County v. Aberdeen at Ormond Beach, L.P., 760 So.2d 126, 130 (Fla.2000). A trial court may enter summary judgment only when there are no genuine issues of material fact conclusively shown from the record, entitling the movant to judgment as a matter of law. See Albelo v. S. Bell, 682 So.2d 1126, 1129 (Fla. 4th DCA 1996). The movant's burden is to come forward with competent evidence to demonstrate the non-existence of a material issue of fact. See Buitrago v. Rohr, 672 So.2d 646, 648 (Fla. 4th DCA 1996) (citing Landers v. Milton, 370 So.2d 368, 370 (Fla.1979)). Once established, to avoid summary judgment, the non-moving party must then produce evidence demonstrating a genuine issue of material fact exists. See id. All doubts and inferences must be resolved against the moving party, and if there is the slightest doubt or conflict in the evidence, then summary judgment is not available. See Albelo, 682 So.2d at 1129.
The seminal case of Holl v. Talcott, 191 So.2d 40, 43 (Fla.1966), held, in a medical malpractice action, that the burden *967 of proving the non-existence of a material fact must be conclusively established before the burden shifts to the non-moving party to refute the moving party's affidavit. In Holl, the plaintiff was reduced to a vegetative state after an operation. The court reviewed the defendant's affidavits of physicians which merely indicated that the defendant physicians and hospitals had acted within the standard of care and practice in the community. The court described such affidavits as "net opinions," in that they were "`naked assertion[s]unsupported by expert medical explanation of its basis or reason it was reached.'" Id. at 45. As such, these affidavits were insufficient to conclusively demonstrate the absence of genuine issues of material fact and to shift the burden to the plaintiff. The legal sufficiency of the plaintiff's affidavits, therefore, should not have been considered. Similarly, in this case, Dr. Perman's affidavit failed to carry the burden of proving the non-existence of a material fact. Although he testified that Dr. Isasi had no duty to diagnose and treat a skin rash being treated by other physicians, Bratt had alleged in his complaint that when presented with the history and physical examination of Bratt, Dr. Isasi had a duty to diagnose and treat Lyme's disease, of which the skin rash was a mere symptom. It was the failure to recognize Bratt's symptoms as Lyme's disease which was the negligence alleged, not the failure to treat a skin rash.
Even if Dr. Perman's affidavit was sufficient, the affidavits of Bratt's mother regarding his history as given to Dr. Isasi coupled with Dr. May's affidavit sufficiently refuted Dr. Perman's affidavit so as to show that a genuine issue of material fact remained. Dr. May testified that it was below the standard of care for any doctor presented with Bratt's history and symptoms not to include Lyme's disease in a differential diagnosis, particularly where the failure to diagnose and treat the disease in its early stages would result in permanent damage. While Dr. Isasi attacks Dr. May's affidavit as being legally insufficient, we conclude that it explained Lyme's disease and its symptoms, the duty of any clinician to know and consider the disease, and the permanent injury which will likely occur if left undiagnosed and untreated. Dr. Isasi saw Bratt early in the course of the disease. At that time, treatment with antibiotics could have prevented the damage that occurs to the central nervous system with untreated Lyme's disease. As such, Dr. May's affidavit created an issue of fact regarding whether Dr. Isasi's failure to diagnose and treat Lyme's disease was a proximate cause of Bratt's injuries, an issue to be determined by the trier of fact. See Fla. Power & Light v. Periera, 705 So.2d 1359, 1361 (Fla.1998).
Finally, Dr. Isasi contends that Dr. May was not qualified to critique his care and treatment where Dr. May is not a "similar health care provider" within the meaning of section 766.102(2), Florida Statutes (1995). Where a defendant is a specialist, then an expert presented to testify regarding the standard of care must be a "`similar health care provider'... who (1)[i]s trained and experienced in the same specialty; and (2)[i]s certified by the appropriate American board in the same specialty." § 766.102(2)(b). However, this section also allows expert testimony from one who is not a "similar health care provider" if the trial court is satisfied that the expert:
[P]ossesses sufficient training, experience, and knowledge as a result of practice or teaching in the specialty of the defendant or practice or teaching in a related field of medicine, so as to be able to provide such expert testimony as to the prevailing professional standard of care in a given field of medicine. Such *968 training, experience, or knowledge must be as a result of the active involvement in the practice or teaching of medicine within the 5-year period before the incident giving rise to the claim.
§ 766.102(2)(c)2 (emphasis added). Dr. May's affidavit satisfies this alternative standard. Even if he is not certified in the sub-specialty of pediatric gastroenterology, as is Dr. Isasi, Dr. May's extensive training and experience in general pediatric medicine qualified him to render an opinion regarding diagnosing and treating children with Bratt's presentation. Dr. May is board certified in pediatrics, was the medical director of child health and laboratory services at a North Carolina hospital, and was an associate professor of pediatrics at East Carolina University School of Medicine. He has made multiple extensive presentations on pediatric subjects, including recognizing childhood illnesses. Conversely, no proof was introduced that Dr. May was not qualified to give expert testimony pursuant to the statutory exception. See Charlonne v. Rosenthal, 642 So.2d 632 (Fla. 3d DCA 1994). Therefore, Dr. May's affidavit was competent to establish the existence of a genuine issue of material fact.
For the foregoing reasons, we reverse the entry of summary judgment in favor of Dr. Isasi and remand for further proceedings.
SHAHOOD and TAYLOR, JJ., concur.