DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**JOHN PITCHER,**
Appellant,

v.

**DAVID J. ZAPPITELL, ZAPPITELL & KAPRAL, P.A.,** and **ZAPPITELL LAW FIRM, P.L.,**
Appellees.

No. 4D14-91

[April 1, 2015]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Meenu Sasser, Judge; L.T. Case No. 502012CA007747XXXXMB.

Reid Moore, Jr., Palm Beach, for appellant.

Kerri C. Smith of Zappitell Law Firm, P.L., Delray Beach, for appellees.

CIKLIN, J.

John Pitcher ("the Father") appeals the summary judgment entered against him and on behalf of his former attorney and law firm in a professional negligence case. He argues the court erred in basing summary judgment on the element of causation. We agree and reverse.

After the Father's daughter Christina died in a car accident resulting from the negligence of drivers of two other vehicles, the Father retained David J. Zappitell and his law firm to represent him in the event a wrongful death action was filed. Zappitell also represented Christina's mother, Olga Waldo ("the Mother"), who is the Father's former wife. Prior to any litigation, the parties entered into a settlement agreement with the driver of one of the vehicles involved in the accident, but not the driver of the second vehicle and an action was filed against the second driver. After a trial, the jury awarded the Father substantially less than the Mother. The Father received a total of $200,000 for past and future pain and suffering damages, compared to the award of $4 million for past and future pain and suffering damages for the Mother.

As a result, the Father brought a complaint against Zappitell and the law firm for malpractice. The Father alleged that Zappitell failed to obtain his informed consent to joint representation, pursuant to Rule of Professional Conduct 4-1.7(b)(4).[1] According to the Father, Zappitell's joint representation of the parties compromised the law firm's ability to represent the Father's interests. The record reveals that the Mother made derogatory statements about the Father and his relationship with his daughter during a pre-trial deposition taken by attorneys for the second driver. In his malpractice lawsuit, the Father alleged that Zappitell neglected to apprise the Father of the Mother's highly inflammatory statements before the Father's own deposition was taken and otherwise failed to properly prepare the Father for what turned out to be a lengthy and comprehensive deposition. He also alleged that Zappitell's concurrent representation of the parties led to Zappitell's unwillingness and reluctance to impeach the negative trial testimony of the Mother. The Father additionally alleged that Zappitell did not properly prepare the Father for trial which permitted the wrongful death defendant to negatively portray the Father in front of the jury. According to the Father, Zappitell's conflict of interest and divided loyalty resulted

---

[1] The rule provides as follows in pertinent part:

**(a) Representing Adverse Interests.** Except as provided in subdivision (b), a lawyer shall not represent a client if:

(1) the representation of 1 client will be directly adverse to another client; or
(2) there is a substantial risk that the representation of 1 or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.

**(b)** Notwithstanding the existence of a conflict of interest under subdivision (a), a lawyer may represent a client if:

(1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;
(2) the representation is not prohibited by law;
(3) the representation does not involve the assertion of a position adverse to another client when the lawyer represents both clients in the same proceeding before a tribunal; and
(4) each affected client gives informed consent, confirmed in writing or clearly stated on the record at a hearing.

R. Regulating Fla. Bar 4-1.7 (2012).

2

in the disparate verdicts.

Zappitell and the law firm moved for summary judgment, arguing that (1) the Father was able to and did offer trial testimony himself, thereby directly responding to the matters the Mother addressed during her deposition; (2) the pre-trial depositions were never entered into evidence; and (3) there was no dispute with regard to causation. In support of their motion, they filed, among other items, transcripts of the Father's trial testimony.

The trial court granted summary judgment for Zappitell and the law firm, finding that "the alleged conflict of interest cannot in and of itself form the basis of the legal malpractice lawsuit." The court also based its ruling on the element of causation, finding that there was no evidence that the alleged conflict caused the disparate awards. The court found that "as a matter of law," it would require speculation and inference stacking to establish causation, especially since pain and suffering damages are discretionary and there are no "specific measures to quantify such damages."

We review a summary judgment de novo. *Chhabra v. Morales*, 906 So. 2d 1261, 1262 (Fla. 4th DCA 2005) (citation omitted).

> The movant's burden [in a summary judgment proceeding] is to come forward with competent evidence to demonstrate the non-existence of a material issue of fact. Once established, to avoid summary judgment, the non-moving party must then produce evidence demonstrating a genuine issue of material fact exists. All doubts and inferences must be resolved against the moving party, and if there is the slightest doubt or conflict in the evidence, then summary judgment is not available.

*Bratt v. Laskas*, 845 So. 2d 964, 966 (Fla. 4th DCA 2003) (internal citations omitted). "A party seeking summary judgment in a negligence action has a more onerous burden than that borne in other types of cases." *Deese v. McKinnonville Hunting Club, Inc.*, 874 So. 2d 1282, 1286 (Fla. 1st DCA 2004) (citation omitted).

The Father asserts that the trial court partly based its summary judgment on an erroneous finding that a rule of professional conduct violation can never be the sole basis of a legal malpractice suit. To the extent that the trial court based its decision on this notion, that would be error. But we do not read the trial court's ruling to be that narrow. In

fact, the trial court was merely recognizing that a violation of a rule of professional conduct does not constitute negligence per se; rather, it may be evidence of negligence. Causation and the other elements of a negligence action must still be established. *See Pressley v. Farley*, 579 So. 2d 160, 161 (Fla. 1st DCA 1991).

Nonetheless, the trial court erred for three reasons. First, the trial court's decision to grant summary judgment appears to have been based on the element of causation which the trial court believed to be unprovable. "'In negligence actions Florida courts follow the more likely than not standard of causation and require proof that the negligence probably caused the plaintiff's injury.'" *Tarleton v. Arnstein & Lehr*, 719 So. 2d 325, 328-29 (Fla. 4th DCA 1998) (quoting *Gooding v. Univ. Hosp. Bldg., Inc.*, 445 So. 2d 1015, 1018 (Fla. 1984)). To establish legal malpractice, a party must establish that the negligence "resulted in and was the proximate cause of loss to the plaintiff." *Dadic v. Schneider*, 722 So. 2d 921, 923 (Fla. 4th DCA 1998). The trial court based its summary judgment on a finding that the Father did not provide sufficient evidence to establish causation in opposition to Zappitell's motion for summary judgment. However, because the non-movant does not have the burden of proof in a summary judgment proceeding, this was error.

When a defendant moves for summary judgment in a negligence case based on causation, summary judgment may not be granted based on a finding that the plaintiff has not come forward with any evidence of causation. This improperly shifts the burden to the non-movant to establish causation. *See Webster v. Martin Mem'l Med. Ctr., Inc.*, 57 So. 3d 896, 897 (Fla. 4th DCA 2011). *See also O'Malley v. Ranger Constr. Indus., Inc.*, 133 So. 3d 1053, 1056 (Fla. 4th DCA 2014) ("[S]ummary judgment should not be granted based on a non-movant's failure to meet its trial burden of proof on the issue of causation."). Indeed, "'[u]nless a movant can show unequivocally that there was no negligence or that plaintiff's negligence was the sole proximate cause of the injury, courts will not be disposed to granting a summary judgment in his favor.'" *Kaplan v. Morse*, 870 So. 2d 934, 937 (Fla. 5th DCA 2004) (quoting *Wills v. Sears, Roebuck & Co.*, 351 So. 2d 29, 31 (Fla. 1977)).

Second, to the extent that the trial court found the burden had shifted to the Father based on the summary judgment evidence submitted by the movants, this was error as well. The evidence submitted by Zappitell and the law firm did not establish a lack of causation. While the evidence, which included transcripts of the Father's trial testimony, arguably showed that Zappitell attempted to rehabilitate the Father on the areas of testimony related to his relationship with his daughter, the

4

evidence did not conclusively establish that Zappitell's alleged conflict of interest did not in any way contribute to the outcome of the underlying wrongful death case. Because Zappitell did not establish a lack of causation, the summary judgment burden of proof never shifted to the Father and he was not required to produce evidence showing an issue of causation. *See Webster*, 57 So. 3d at 897 (citation omitted). Additionally, we are unpersuaded by Zappitell's argument that lack of causation was established by the fact that the depositions were not submitted into evidence during the wrongful death trial.

Third, in its order granting summary judgment, the trial court found causation would be based on speculation and inference stacking. We disagree. The Father's theory of causation was not so attenuated that it required speculation or inference stacking. *See Koelling v. CSX Transp., Inc.*, 673 So. 2d 67, 67-68 (Fla. 5th DCA 1996) (affirming summary judgment where plaintiff's theory of causation of vehicle collision with train involved an attenuated series of steps). Here, the Father's theory of causation does not involve numerous steps. He is instead making the simple argument that his attorney's conflict of interest compromised his attorney's preparation and presentation of his case, which led to the hugely disparate awards.[2]

We recognize that "'[s]ummary judgments have made a very substantial contribution to the speedy and efficient administration of justice,'" but "'the right to trial by jury is a concept so deeply imbedded in our jurisprudence that only in those cases where there is no issue whatever of a material fact and it is made to appear that the moving party is entitled to a judgment as a matter of law should one be granted.'" *Bianchi v. Garber*, 528 So. 2d 969, 970 (Fla. 4th DCA 1988) (quoting *Majeske v. Palm Beach Kennel Club*, 117 So. 2d 531, 534 (Fla. 2d DCA 1959)). Summary judgments in negligence cases are rarely warranted and the record before us is unconvincing that an exception to the general rule should apply.

Because it was error in this case to base summary judgment on causation, we reverse.

*Reversed and remanded for further proceedings.*

---

[2] Indeed, Zappitell himself voiced concern over the "unconscionable" low ball verdict obtained by the Father. Zappitell filed a post-verdict motion for additur, arguing that the Father's testimony under cross-examination was "negative," thereby producing an "overly angry" jury who felt the need to "punish" the Father by meting out glaringly lopsided awards.

STEVENSON and TAYLOR, JJ., concur.

*     *     *

***Not final until disposition of timely filed motion for rehearing.***