DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**CARYN HALL YOST-RUDGE,**
Appellant,

v.

**A TO Z PROPERTIES, INC**., a Florida Corporation,
Appellee.

No. 4D17-3204

[February 6, 2019]

Appeal from the Circuit Court for the Nineteenth Judicial Circuit, Martin County; Barbara W. Bronis, Judge; L.T. Case No. 432016CA000484.

Caryn Hall Yost-Rudge, Stuart, pro se.

Alexander D. Gonano of Gonano & Harrell, Fort Pierce, for appellee.

LEVINE, J.

One of the hallmarks of the Florida Constitution is the provision protecting the familial home by enforcement of homestead protections in article X, section 4 of the Florida Constitution. That provision provides that a married owner of homestead real estate may alienate the homestead by sale only if joined by the spouse. Fla. Const. art. X, § 4(2)(c).

In this case, the husband sold the property, claimed by appellant ("wife") to be protected by homestead, without the wife's agreement or signature on the warranty deed. Appellee ("buyer") claims that municipal violations regarding the safety of that property resulted in an injunction prohibiting the wife and her husband from occupying the property which, in turn, resulted in their abandonment of the property. The buyer claims further that if the property was abandoned, then the property lost its homestead protection, obviating the buyer's need to obtain the wife's written consent to her husband's sale of the property.

We find, consistent with the Florida Constitution, that the wife must agree to the sale of the property and that her being prevented from returning to the property due to an injunction for municipal violations was

not an abandonment that destroyed the homestead protections of the property. We find the trial court erred in granting partial summary judgment and finding that the wife had no homestead interest in the property sold by the husband without her consent. We therefore reverse.

The wife lived on the property at issue with her husband until March 2010.[1] On March 5, 2010, after a series of code compliance issues with the City of Stuart and Martin County deeming the property unsafe, the wife and her family were ordered by a court to vacate the property and enjoined from occupying or residing on it. They complied and never resumed residence on the property, instead living in rented residences or staying with friends. Eventually, the government cleared debris and certain structures from the property.

In March 2015, the wife's husband sold the property to the buyer and Capital C, Inc., who later quit-claimed its interest to the buyer. The wife was not a party to the warranty deed. The buyer then filed a complaint to quiet title and for relief declaring that the wife and her husband had no homestead interest in the property.

The wife, pro se, answered the complaint, asserting that the transfer was legally insufficient without her signature due to her continuing homestead interest in the property. She generally alleged that she maintained an intent to return to the property and had been trying over the course of several years to return it to habitable condition. The wife concluded that because she intended to return and never claimed another homestead, the property remained her homestead even in her absence. When the buyer moved for partial summary judgment on its claim as to the wife, the wife responded by again denying abandonment of the property.

After a hearing on the summary judgment motion, the trial court entered partial final summary judgment in favor of the buyer. In doing so, it noted that the wife had failed to file any affidavits in opposition to summary judgment and had not raised any affirmative defenses in her answer. The court ruled that, at the time of the sale to the buyer, the property was not the homestead of the wife or her husband, so the buyer acquired the property free and clear as a result of the husband's sale. This

---

[1] The wife and her husband lived together in their home on the property for several years before legally marrying in August 2010. The record reflects that this home was still standing at and after the date of the marriage despite the family having vacated the property in March 2010.

2

appeal follows.

We review an order granting summary judgment de novo. *Volusia Cty. v. Aberdeen at Ormond Beach, L.P.*, 760 So. 2d 126, 130 (Fla. 2000). Summary judgment is proper only where there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. *Id.* The party seeking summary judgment is required to present competent evidence demonstrating the non-existence of any material issue of fact. *Bratt ex rel. Bratt v. Laskas*, 845 So. 2d 964, 966 (Fla. 4th DCA 2003). At the summary judgment stage, all doubts are resolved against the moving party. *Id.*

Article X, section 4 of the Florida Constitution applies homestead protection "to the residence of the owner or the owner's family." Fla. Const., art. X, § 4(a)(1). As a result, the married owner of a homestead property may not alienate the property without joinder or consent of his or her spouse. *Vera v. Wells Fargo Bank, N.A.*, 178 So. 3d 517, 519 n.1 (Fla. 4th DCA 2015). The protections of homestead are limited to the residence of the owner and generally require the owner's occupancy of the home with the intent to remain there. *Law v. Law*, 738 So. 2d 522, 524 (Fla. 4th DCA 1999).

The homestead is accorded special status under Florida law and, as such, the Florida Constitution's homestead provisions are construed liberally. *See JBK Assocs. v. Sill Bros., Inc.*, 160 So. 3d 94, 96 (Fla. 4th DCA 2015) ("Homestead exemption laws should be liberally applied to the end that the family shall have shelter and shall not be reduced to absolute destitution.") (quoting *Orange Brevard Plumbing & Heating Co. v. La Croix*, 137 So. 2d 201, 204 (Fla. 1962)).

It is clear, however, that once homestead is established, it still can be lost due to abandonment. "Once homestead status is acquired, it continues until the homestead is abandoned or alienated in the manner provided by law. To show abandonment, both the owner and his family must have abandoned the property." *Coy v. Mango Bay Prop. and Invs., Inc.*, 963 So. 2d 873, 878 (Fla. 4th DCA 2007) (citation omitted). Consistent with the special status of Florida homestead, a finding of abandonment requires a "strong showing" of intent not to return to the homestead. *In re Herr*, 197 B.R. 939, 941 (Bankr. S.D. Fla. 1996).

Whether a property has been abandoned and thus lost its homestead protections is determined, case by case, in light of the totality of circumstances. *Beensen v. Burgess*, 218 So. 2d 517, 519 (Fla. 4th DCA 1969). Only in light of the totality of circumstances, with all doubts

resolved against the moving party, can it be determined that the owner has abandoned the property and abandoned its homestead protections.

Florida courts have consistently held that a property is not abandoned for the purposes of homestead protection when the owner involuntarily ceases to reside on the property. *In re Estate of Melisi*, 440 So. 2d 584, 585 (Fla. 4th DCA 1983). For example, the Florida Supreme Court held in *Stokes v. Whidden*, 122 So. 566 (Fla. 1929), that a homestead was not abandoned even though the owner of the property had been adjudged insane and committed to a state institution. In that case, unlike this one, the owner's family continued to live on the property. *Id.* at 566; *see also Dean v. Heimbach*, 409 So. 2d 157 (Fla. 1st DCA 1982) (finding homestead not abandoned when father had to leave county as condition of bail but intended to return and family continued to live on property).

Still, courts have also upheld homestead protections even when a property has been left completely unoccupied, as is the case here. One such case is *Crain v. Putnam*, 687 So. 2d 1325 (Fla. 4th DCA 1997). There, the homeowner had been absent from the homestead property for around two years after being placed in a nursing home in a vegetative state; nothing was done with the property during this period. *Id.* at 1326. However, the homeowner's furniture, clothing, and most of her possessions remained on the property, she received mail at the property, and, given her condition, she could not "communicate any intention regarding her residence" or her plans to maintain it as a homestead. *Id.* This court was asked to determine whether the article VII homestead tax exemption still applied to the property in light of this absence. *Id.* We concluded that, under the circumstances, the property retained its homestead character. *Id.* In doing so, we noted that Florida's homestead protections are not subject to a physical presence requirement, nor are they forfeited when a homeowner involuntarily changes his or her residence. *Id.*

Another factually similar and persuasive case is *In re Herr*. In *Herr*, the owner's home was destroyed by a hurricane and the property was rendered uninhabitable after the city demolished the remaining structures on the property. 197 B.R. at 941. The property languished for three years without any action by the debtor, but the debtor maintained that he was planning on selling the property and using the proceeds to purchase a new homestead. *Id.* Because Florida law requires a "strong showing of a debtor's intent not to return to his residence" before the homestead can be considered abandoned, the court held that the property retained its homestead protections. *Id.*

*In re Gaines*, No. 05-14608, 2007 WL 1228157 (Bankr. M.D. Fla. Apr. 18, 2007), where evidence of homestead intent was lacking, is distinguishable from this case. There, the court concluded that the property was not a homestead where the owner was absent, failed to present any evidence that he actually intended to reoccupy the property, and could not provide factual support as to why he left the property for five years. This is unlike the present case, where the wife provided evidence of ongoing litigation to preserve the property or be able to return to it.

Here, the trial court decided the homestead issue on summary judgment. As discussed above, abandonment turns on intent and is necessarily a fact-intensive inquiry. *See Beensen*, 218 So. 2d at 519 ("The question of whether there has been an abandonment of a homestead so as to deprive it of its status as such under the constitution should be determined by consideration of all of the pertinent facts and circumstances of each case."). The information available to the court at summary judgment gave rise to a genuine issue of material fact. Although the wife did not submit an affidavit in response to the motion for summary judgment or raise affirmative defenses, she did affirmatively deny the allegations of the complaint. Further, the record does contain some evidence indicating there was a conflict of material fact as to whether the wife abandoned the property.

For one, the wife maintained in her answer that the family was involuntarily "forced off" the property and generally asserted a continuing homestead interest in the property. Additionally, the wife attached to her answer in denial evidence indicating that, after being removed from the property, she was making efforts to remediate it with the intention of returning. These attachments included a 2011 letter from an engineering consultant reflecting that the husband had the property inspected in June 2010 for structural issues with the home. Another 2011 letter indicated that the husband tried to contact the city commission regarding his attempts to bring the property up to code and to "determine the facts concerning my building, on my property." Further, an invoice indicated that the husband paid for waste disposal on the property as late as January 2011. Finally, numerous court filings from the wife indicated that she was fighting to retain the property until at least 2012, supporting her argument that she did not intend to abandon the property.

The trial court erred in granting summary judgment, since the question of the wife's intent relating to the alleged abandonment of the homestead was still in dispute. Viewing the facts in the light most favorable to the wife, the non-movant, genuine issues existed as to her intent to abandon the property or retain the property as her homestead.

5

In the face of such issues of material fact, it was error to enter summary judgment against her. *See Bratt*, 845 So. 2d at 966.

In conclusion, due to the material conflict of facts and the special status accorded to the protection of the homestead property, we reverse and remand for further proceedings consistent with this opinion.

*Reversed and remanded for further proceedings.*

WARNER and CIKLIN, JJ., concur.

*     *     *

***Not final until disposition of timely filed motion for rehearing.***