# Third District Court of Appeal

## State of Florida

Opinion filed August 27, 2025.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D24-0798
Lower Tribunal No. 21-5039-CP-02
_____

**Jorge Mendia,**
Appellant,

vs.

**Abraham Figueroa Galvez,**
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, Bertila Soto, Judge.

Lowy and Cook, P.A., and Jonathan Smulevich and Leah R. Rose, for appellant.

Luis E. Barreto & Associates, and Luis E. Barreto; The Billbrough Firm, P.A., and G. Bart Billbrough, for appellee.

Before LINDSEY, GORDO and GOODEN, JJ.

GOODEN, J.

Appellant Jorge Mendia appeals a final summary judgment declaring a quitclaim deed void ab initio for violating the Florida Constitution's restriction on transfer of homestead property. The facts are undisputed. Because the Appellee is entitled to judgment as a matter of law, we affirm.

**I.**

Appellee Abraham Figueroa Galvez and Magali Figueroa were married in the Republic of Cuba in 1961. After moving to the United States, they bought the home at issue and took ownership by a warranty deed. But Galvez developed a gambling addiction. For that reason, in 1998, Galvez and Figueroa executed a post-nuptial agreement. The agreement provided:

> **WHEREAS** the Husband's uncontrolled gambling has led to a mutual belief that the Wife shall be the sole owner of the marital property; and
>
> **WHEREAS** it is the desire and intention of the Parties that their relations, with respect to property and financial matters, and other, as are discussed below, be finally fixed by this Agreement in order to settle and determine, in all respects and for all purposes, their respective present and future property rights, claims and demands, in such a manner that any action with respect to the rights and obligations, past, present or future, of either Party with respect to the other, be finally and conclusively settled and determined by this Agreement[.]
>
> . . .
>
> **NOW THEREFORE**, in consideration of the mutual covenants, promises, terms and conditions herein contained, and for other good and valuable considerations, each Party to the other given, receipt of which is acknowledged and adequacy

2

of the consideration admitted, it is mutually covenanted, promised and agreed by the Husband and Wife as follows:

. . .

4.    Real Property:  Both Husband and Wife own the following real property:

1.    Martial home located at 2249 SW 13 Street, Miami, Florida 33145, . . . .

Husband shall transfer all title and interest in the marital home described above to the Wife by Quit-Claim Deed.  The Wife shall take the property as her sole property and shall have exclusive ownership and control of the property.  Both Husband and Wife shall continue to co-habitate as husband and wife in the marital home.

Notwithstanding the above, the Husband acknowledges that he is relinquishing all title and interest in the marital home described above and forever waives any right and or interest in the marital home on a subsequent dissolution of marriage proceedings, if any.

The agreement did not specifically address homestead rights or the death of either spouse.

That same day, Galvez and Figueroa executed a quitclaim deed. Galvez "remised, released and quitclaimed . . . unto [Figueroa], and her heirs, successors and assigns forever, all the right, title, interest, claim and demand which [Galvez] has in and to [the Property.]"  This deed also did not specifically address Galvez's homestead rights.[1]

---

[1] In 2011, Galvez and Figueroa jointly filed for Chapter 7 bankruptcy and listed the property as their homestead.

3

Over twenty years later, in 2021, Figueroa executed another quitclaim deed. This time, she conveyed the property to Appellant Jorge Mendia—her second cousin. The deed was prepared by a nonlawyer, who also served as the notary public. It was witnessed by Mendia's significant other. It was not signed or acknowledged by Galvez. It does not appear that Galvez even knew about this deed.

Just two months later, Figueroa passed away at age 85. At the time of her death, Figueroa was still married to Galvez and had been for over 59 years. The couple still resided in the home as husband and wife.

Following Figueroa's death, Mendia asserted ownership of the property. He issued a notice of ownership change—announcing he now owned the property. He also called the police to remove the locks from the driveway.

Since Figueroa died intestate, Galvez was appointed personal representative of the Estate. He filed a petition to determine homestead status. Galvez also filed a complaint against Mendia to invalidate the 2021 quitclaim deed. He asserted that the 2021 deed was void ab initio because it was executed in violation of his homestead rights under Article X, section 4, of the Florida Constitution.[2]

---

[2] Galvez further claimed that Figueroa lacked capacity to execute the

4

Galvez moved for summary judgment. In support, he submitted Miami-Dade County real estate tax records and an inventory from Figueroa's estate proceedings, demonstrating that the property was homestead exempt. Mendia responded that Galvez waived his homestead rights by executing the post-nuptial agreement and 1998 quitclaim deed.

After hearing from the parties, the trial court granted the motion and entered judgment for Galvez. It ruled that the 2021 quitclaim deed was void ab initio because Galvez did not join in the conveyance. It also found Galvez did not explicitly waive his homestead rights by the 1998 quitclaim deed and post-nuptial agreement. This appeal followed.

## II.

Our review of a final summary judgment involving constitutional, statutory, and contractual interpretation is de novo. See Fla. Hosp. Waterman, Inc. v. Buster, 984 So. 2d 478, 485 (Fla. 2008); Bechor v. Simcenter, Inc., 394 So. 3d 666, 668 (Fla. 3d DCA 2024); Duffner Fam. 2012 Irrevocable Tr. v. Lee R. Duffner Revocable Living Tr., 394 So. 3d 236, 239 (Fla. 3d DCA 2024).

## III.

---

quitclaim deed and only did so under duress. That said, these issues are not before the Court.

5

The Florida Constitution protects homestead property by way of: (1) exemption from taxes, (2) protection against forced sale by creditors, and (3) restrictions on alienation or devise.  Snyder v. Davis, 699 So. 2d 999, 1001–02 (Fla. 1997).  This case involves the third protection.  Relevant to this protection, the Florida Constitution provides:

> The homestead shall not be subject to devise if the owner is survived by spouse or minor child, except the homestead may be devised to the owner's spouse if there be no minor child.  The owner of homestead real estate, joined by the spouse if married, may alienate the homestead by mortgage, sale or gift and, if married, may by deed transfer the title to an estate by the entirety with the spouse.  If the owner or spouse is incompetent, the method of alienation or encumbrance shall be as provided by law.

Art. X, § 4(c), Fla. Const.  See also § 732.401(1), Fla. Stat. (2021) ("If not devised as authorized by law and the constitution, the homestead shall descend in the same manner as other intestate property; but if the decedent is survived by a spouse and one or more descendants, the surviving spouse shall take a life estate in the homestead, with a vested remainder to the descendants in being at the time of the decedent's death per stirpes."); § 732.4015(1), Fla. Stat. (2021) ("As provided by the State Constitution, the homestead shall not be subject to devise if the owner is survived by a spouse or a minor child or minor children, except that the homestead may be devised to the owner's spouse if there is no minor child or minor children.").

6

"This provision is designed to protect surviving spouses and is to be liberally construed for their benefit." Rogers v. Guardianship Program of Dade Cnty., Inc., 408 So. 3d 846, 850 (Fla. 3d DCA 2025). See In re Est. of Cleeves, 509 So. 2d 1256, 1258 (Fla. 2d DCA 1987) (explaining the "purpose of the constitutional and statutory prohibition against and limitation on devise of the homestead is to protect those legally dependent on the decedent because of a family relationship."). It "requires that the owner of the homestead be 'joined by the spouse if married.'" Jameson v. Jameson, 387 So. 2d 351, 353 (Fla. 1980). "[I]t is clear that both must join in a conveyance of a homestead owned by one spouse to a third party . . . ." Id. See also Yost-Rudge v. A to Z Props., Inc., 263 So. 3d 95, 96 (Fla. 4th DCA 2019) ("That provision provides that a married owner of homestead real estate may alienate the homestead by sale only if joined by the spouse."); Mirzataheri v. FM E. Devs., LLC, 193 So. 3d 19, 22 (Fla. 3d DCA 2016) ("Article X, Section 4(c) . . . requires both spouses to consent to the alienation of homestead property owned by one of the spouses."); Vera v. Wells Fargo Bank, N.A., 178 So. 3d 517, 519 n.1 (Fla. 4th DCA 2015) ("Homestead property may not be alienated by a married owner without joinder or consent of the spouse."). "A purported transfer of the homestead, not in compliance with constitutional requirements, is void." Clemons v. Thornton, 993 So. 2d 1054, 1056 (Fla.

7

1st DCA 2008). See also Rogers, 408 So. 3d at 851; Schlossberg v. Est. of Kaporovsky, 303 So. 3d 982, 987 (Fla. 4th DCA 2020).

But these rights, like most, can be waived. See generally Thayer v. Hawthorn, 363 So. 3d 170, 173 (Fla. 4th DCA 2023); § 732.702(1), Fla. Stat. (setting forth waiver of spousal rights through contracts and agreements); § 732.7025, Fla. Stat. (setting forth waiver of homestead rights through deed). "In order to find that a survivor spouse has waived/relinquished homestead protection, evidence must demonstrate the survivor's intent to waive the constitutional and statutory claim to homestead property." Rutherford v. Gascon, 679 So. 2d 329, 331 (Fla. 2d DCA 1996).

Mendia maintains Galvez did so. As evidence of this intent, he points to the post-nuptial agreement and quitclaim deed. Since those documents were executed in 1998, we must look to the statutes in effect at that time. Section 732.702, Florida Statutes, provided:

> The right of election of a surviving spouse, the rights of the surviving spouse as intestate successor or as a pretermitted spouse, and the rights of the surviving spouse to homestead, exempt property, and family allowance, or any of them, may be waived, wholly or partly, before or after marriage, by a written contract, agreement, or waiver, signed by the waiving party. Unless it provides to the contrary, a waiver of "all rights," or equivalent language, in the property or estate of a present or prospective spouse, or a complete property settlement entered into after, or in anticipation of, separation, dissolution of marriage, or divorce, is a waiver of all rights to elective share, intestate share, pretermitted share, homestead property, exempt

8

property, and family allowance by each spouse in the property of the other and a renunciation by each of all benefits that would otherwise pass to either from the other by intestate succession or by the provisions of any will executed before the waiver or property settlement.

§ 732.702(1), Fla. Stat. (1998).[3]

Courts analyzing this provision have required specific language referencing homestead or hereditaments to effectuate a waiver.  Contrast City Nat'l Bank of Fla. v. Tescher, 557 So. 2d 615, 616 n.1 (Fla. 3d DCA 1990) (finding waiver where antenuptial agreement stated that the parties "surrender, renounce and release all and every of their rights, interest, dower, homestead, and curtesy in and to the estate and property of the other"), Hulsh v. Hulsh, 431 So. 2d 658, 661 (Fla. 3d DCA 1983) (finding waiver where antenuptial agreement stated that the party "expressly waive[s] all rights . . . to the property . . . including any such rights which might be claimed under the laws of dower, courtesy [sic], or the elective share of a spouse, . . . homestead rights. . . ."), and Steffens v. Evans, 70 So. 3d 758, 759 (Fla. 4th DCA 2011) (finding waiver where post-nuptial agreement stated

---

[3] In 2018, the Legislature enacted section 732.7025, Florida Statutes, which mandates certain language in a deed in order to effectuate a waiver.  § 732.7025(1), Fla. Stat. (2018).  Because this statute was not in effect at the time of execution of 1998 quitclaim, it does not apply to analyze that document.

that the party waived "Such rights as dower or curtesy, and statutory or other allowances to a spouse of a decedent," "Distribution by way of intestacy, special equity, division of property, inheritance, equitable distribution, and descent and distribution," and "The rights of a surviving spouse to homestead"), with Thayer, 363 So. 3d at 171 (holding decedent spouse did not waive homestead rights in warranty deed because deed did not reference homestead or hereditament rights), and Rogers, 408 So. 3d at 851 (same).

We turn first to the post-nuptial agreement. In that document, Galvez agreed to "transfer all title and interest in the marital home" in a quitclaim deed. He "relinquish[ed] all title and interest in the marital home" and "forever waive[d] any right and or interest in the marital home on a subsequent dissolution of marriage proceedings, if any."

While the agreement mentions waiver of rights, it only does so in the context of "a subsequent dissolution of marriage proceedings, if any." Mendia asserts the use of the words "if any" means also or additionally and that it does not limit waiver to subsequent dissolution proceedings. That is wrong. The phrase "if any" acknowledges the possibility that the event does not occur. In other words, it makes the waiver contingent upon the subsequent dissolution of marriage proceedings—an event that never occurred here. This falls into the statute's text—"Unless it provides to the

10

contrary." § 732.702(1), Fla. Stat. The post-nuptial agreement did not effectuate a waiver of Galvez's homestead rights.

In like manner, the 1998 quitclaim deed provided Galvez "remised, released and quitclaimed . . . unto [Figueroa], and her heirs, successors and assigns forever, all the right, title, interest, claim and demand which [Galvez] has in and to [the Property.]" But the deed did not specifically mention hereditaments or homestead rights. Thus, the 1998 quitclaim deed did not sufficiently waive Galvez's homestead rights. See Rogers, 408 So. 3d at 851; Thayer, 363 So. 3d at 171.

Since Galvez did not waive his homestead rights in either the post-nuptial agreement or 1998 quitclaim deed, his rights still existed. Figueroa could not unilaterally quitclaim the property to Mendia. The law required that Galvez join that conveyance. Since he did not do so, the 2021 quitclaim deed violated Article X, section 4, of the Florida Constitution. Art. X, § 4(c), Fla. Const. It is void ab initio. See King v. Ellison, 648 So. 2d 666, 668 (Fla. 1994); Clemons, 993 So. 2d at 1056. Galvez is entitled to judgment as a matter of law. Fla. R. Civ. P. 1.510(a). Accordingly, the trial court correctly entered final summary judgment for Galvez.

Affirmed.

11